REED'S HEIRS AND ADMINISTRATORS *vs.* E. F. CHAM-
BERS.—*E. S. June,* 1834.

Where R sold his land (which was incumbered by mortgage and judgment) to
S, and entered into a written contract, binding under the statute of frauds,
by which the latter promised to pay one of R's creditors, by a certain day,
a subsequent parol agreement, pointing out the mode in which the title to
the land should be secured to S, and in effect, carrying the contract into
execution, but which postponed the day of the creditor's payment, is no
variance of the original agreement; for even where the time of payment is of
the essence of a contract, a strict compliance may be waived by the vendor
of the land.

APPEAL from the Equity side of *Kent* county court.

The present bill was filed by the appellee against the
appellants, to recover a sum of money, the proceeds of cer-
tain real estate, which, under the circumstances detailed
by the judge who delivered the opinion of this court, had
been paid to the clerk of *Kent* county court, and by him
deposited in bank.

The county court decreed the money to the complainant,
and from that decree the defendant prosecuted an appeal to
this court.

The cause was argued before STEPHEN, ARCHER, and
DORSEY, Judges.

*Wm. Carmichael* for the appellants.

There are a few plain legal propositions which, if recog-
nized by this court, must decide the cause.   By the statute
of frauds and perjuries no parol contract is binding for the
sale of land ; and by the common law, and this statute, no
written contract can be changed, altered, or added to, by
any parol agreement.   *Roberts on Frauds,* 2d *Am. ed.,* 10,
where all the authorities are collected in notes, and go to
establish this proposition, and further, that the rule equally
binds the courts of law, and courts of equity.

In the case of *Howard vs. Rogers,* 4 *Harr. and Johns.*
281, Ch. J. CHASE decided, with the concurrence of the

other judges, that parol evidence is not to be admitted, nor extrinsic circumstances introduced in the exposition of deeds, except only in the case of latent ambiguity; and in *Wesley and others vs. Thomas and others*, 6 *Harr. and Johns.* 24, Judge W. Dorsey declares, that "by the rule of the common law, independent of the statute of frauds and perjuries, parol testimony is inadmissible to contradict, add to, or vary the terms of a written agreement." The written agreement between *Reed* and *Spencer* was specific, that *Spencer* should pay the *Andersons'* judgment, *Gettings'* mortgage, and pay the balance with interest in twelve months; the parol agreement, which the court below received and adopted, was different and variant, that the lands should be sold by the sheriff. The written agreement was, that the deed should be made by *Reed;* the parol agreement, that the title should be made by the sheriff. It is manifest that, at the time of the written agreement, one of the objects of *Reed* was to prevent the land being sold by the sheriff, but he agreed by parol that the sheriff should sell. Judge Dorsey adds, the principle is founded in the wisest policy: it guards the chastity of written agreements against all interpolations; but the court below sanctioned the violation of the chastity of this written agreement, which they ought to have protected. Written agreements speak their own views: parol agreements are presented by parol testimony, and subject to misconstruction, fraud, and perjury. This is the foundation of the rule at common law, adopted and sanctioned by the statute of *Charles*, and courts and judges are bound to preserve and maintain the land-marks of the law.

The appellee, by his bill and the testimony taken under the commission, seems to rest his claim upon the acts done between the parties. By a perusal of the testimony, it will appear that not a single act was done by either party in performance of the written contract; all the complainant was able to prove under the commission was the conversation held with *Reed's* overseer, in which he promised him

some compensation for putting the wheat in good order, and that he sent a few team and some hands to assist in the operation: these were substantive, independent acts.    The rule of law must be familiar to this court, where a contract is made for the sale of lands by parol, and possession delivered, the contract is binding; and where one party contractor performs his part of the contract, a court of equity will compel performance on the other; 1 *Mad'x Ch.* 302, *Ambler*, 586; but the act done must be a substantive part of the contract, not voluntary, and by which the party performing would sustain a substantial injury unless relieved in equity.    1 *Mad'x Ch.* 304.

A question may be raised whether the appellants, the defendants below, can avail themselves of the defence of the statute of frauds and perjuries without pleading it.

The rule is, that although a party to a parol contract, inhibited by the statute, confesses the contract by his answer, he may still avoid it, by pleading the statute; but if he confesses the contract, or submits to a decree for the performance, he cannot, upon hearing, avail himself of the protection of the statute.    1 *Mad'x*, 304, 6 *Vesey*, 554.    The defendants below in this cause made no admission, they disclaimed all knowledge of the parol contract, and the plea of the statute of frauds and perjuries would have been superfluous.

*Chambers* for the appellee.    The reporters have not the notes of this argument.

STEPHEN, J., delivered the opinion of the court.

The question in this case arises upon the following statement of facts:    On the 18th of October, 1829, Gen. *Philip Reed* sold to *Richard Spencer* a tract of land in *Kent* county, for the sum of seven thousand dollars; which land was afterwards, on the 1st day of December, in the same year, sold by *Spencer* to the complainant.    Prior to the sale from *Reed* to *Spencer*, the farm had been mortgaged to *Gettings*

for the sum of three thousand dollars; and the land was then subject to sundry liens arising from judgments against *Reed,* which, together with the mortgage, amounted to more than the purchase money. On one of those judgments an execution had been issued, and the farm levied on by the sheriff for a considerable sum of money due to *Anderson.* The contract of sale made between *Reed* and *Spencer* is in substance as follows : *Reed* sold to *Spencer* his farm for seven thousand dollars, out of which was to be paid the balance of the mortgage, and judgment at the suit of *James M. Anderson* and *Edward Anderson ;* also a mortgage and debt due by *Reed* to *James Gettings,* of *Baltimore* county ; and any balance which might remain due, was to be paid with interest to *Reed* at the expiration of the term of twelve months. It was further stipulated, that *Anderson's* claim was to be paid by *Spencer* on or before the 2d of December next. In a short time after this contract, to wit, on the 2d of November, 1829, for the purpose of securing the title to *Spencer,* it was agreed between *Reed, Spencer,* and the sheriff, that the land should be sold by the sheriff under the execution then in the sheriff's hands; and it was advertised for sale on the 2d of the following December. On the 2d of November, in the same year, *Reed* died. At the sale the complainant, who had previously bought *Spencer's* interest, became the purchaser, for a sum which, added to the mortgaged debt, amounted to seven thousand dollars. The complainant then sold his title to *Mitchell* for the sum of eight thousand five hundred dollars, with an understanding that *Mitchell* was to pay the mortgaged debt, and *Anderson's* judgment, and to pay the balance to complainant. As the most eligible mode of obtaining the title for *Mitchell,* it was agreed by all the parties interested, that *Mitchell* should be returned as the purchaser, and obtain a deed from the sheriff, for which purpose the land was again exposed to sale, and *Mitchell* bid a sum which, added to the mortgage, amounted to eight thousand five hundred dollars. The sheriff reported the sale as

made to *Mitchell* for the sum of four thousand nine hundred and thirty-nine dollars and fifty cents, and the court ordered the same to be applied to the execution under which the land was sold, and to other judgments which were liens at the time of *Reed's* sale, excepting the sum of one thousand five hundred dollars, which was paid to the clerk, and afterwards deposited in bank. The seven thousand dollars, the purchase money agreed to be paid to *Reed*, having been applied to the payment of the mortgage debt and the judgment, the question for the court to decide is, whether the complainant is entitled to the fifteen hundred dollars, the surplus money beyond the sum agreed to be paid to *Reed*, which *Mitchell* bid for the land under his contract with the complainant. There can be no question but that the contract between *Reed* and *Spencer* was legal and binding upon the parties, it being in all respects perfectly conformable to the requisitions of the statute of frauds and perjuries. The verbal agreement entered into on the 2d of November of the same year, was no variation or change of the written contract for the sale of the land, but only indicated the mode in which the title was to be secured to *Spencer* by *Reed*. It was, in effect, to carry the contract into execution, and not to add to, vary, or change it. As to the objection insisted upon in the answer, that *Spencer* forfeited his interest under the contract of purchase, by not paying the purchase money according to the terms of it, we think it wholly untenable, because the principle is well settled, that even where the time of payment is of the essence of the contract, a strict compliance at the day may be waived by the vendor. See 1 *Johns. Chan. Rep.*, 270, where the principle is stated to be, that in the sale of lands, time may make part of the essence of the contract, and on default at the day without any just excuse, or any acquiescence, or subsequent waiver by the other party, the court will not help the party in default. In this case, if the money was not paid as stipulated by the written contract, the non-payment at the time originated from the ex-

press agreement of the parties, and all the effect of such omission upon their their respective rights, must be considered as waived. We therefore think that there is no error in the decree of *Kent* county court, and that the same ought to be affirmed with costs.

**DECREE AFFIRMED WITH COSTS.**