JOHN COATES and WM. C. GLENN, *vs.* JAMES A.
SANGSTON, ET AL., Garnishees of EDWARD
CUNNINGHAM.

Where a contract for the performance of work is silent as to the time within
which the work is to be done, the law allows a *reasonable time*, and the
declarations of the party who agreed to do the work are admissible to
show what he considered such reasonable time.

In case of a simple contract in writing, oral evidence is admissible to show a
subsequent agreement enlarging the time or changing the place of perform-
ance, or a waiver of, or a parol suppletory agreement supplying some-
thing not in, the contract.

A general reservation of the right to object to evidence will not, since the
act of 1825, ch. 117, give any right to object in this court unless it has
been availed of below by special exceptions to the portions of the testimony
deemed inadmissible.

The garnishees offered in evidence the contract under which the defendant,
debtor had done work for them, and proved that they had paid certain
sums for him. HELD, that in the absence of proof of other dealings be-
tween the parties, it was competent for the jury to find that these sums
were paid on account of the contract.

Prayers that the plaintiffs could recover from the garnishees "at the rate
and valuation of the contract, deducting the cost of completing it," not tak-
ing notice of payments they had made to the debtor, are for this reason
defective.

The principle of recovery on a contract is very different from that on a
*quantum valebat* or *meruit;* in the latter the plaintiff can claim only what,
under all the circumstances, his labor, services or materials may be worth.

The law will not sanction a recovery upon the ground of contract when the
claimant has neither performed his part of its stipulations nor shown any
reason for his non-performance.

It is not the duty of courts to instruct the jury unless applied to for that pur-
pose, and then they may grant or refuse prayers as offered, or add qualifi-
cations, or reject all and instruct the jury in their own words.

APPEAL from Baltimore County Court.

This was an *attachment* on warrant, issued by the appel-
lants, on the 13th of November 1848, against Cunningham,
as an absconding debtor, and on the same day laid in the
hands of the Sangstons, as garnishees. The affidavit of one
of the plaintiffs, made before the justice who ordered the writ,

16      v. 5

states, that he is credibly informed and believes Cunningham "is actually run away and fled from justice, and removed from his place of abode with intent to injure and defraud his creditors."

The garnishees appeared and plead:—1st, *non-assumpsit* for Cunninghim; and 2nd, *nulla bona* in their hands. The plaintiffs joined isssue upon the *first* plea and replied to the *second*, that the garnishees, "*on the day of laying the attachment in their hands,*" had goods, credits, &c.; on which replication issue was joined by the defendants.

*Exception.* The plaintiffs proved Cunningham's indebtedness to them in the sum of $800 and more; that he had found materials and done work for the garnishees, by building for them two houses and repairing a third, to the value of $700 each for the houses and $450 for the repairs, and that he had run away.

The defendants then offered a written contract signed by Cunningham and dated the 3rd of April 1848, by which he agreed to build for the defendants two small houses and repair a third in the mode therein particularly specified, and to furnish all labor and materials for the same, for $1800, of which $600 was to be paid during the progress of the work, one-half of the balance in sixty days, and the residue in six months from the finishing of the work.

The other evidence in the case is sufficiently stated in the opinion of this court. It may be proper, however, to state, that the set-offs and allowances claimed by the defendants consisted:—1st, of cash paid him, or others for him, $1068.08; 2nd, cash paid the carpenter who completed the work $526.78. —this item included a charge of $172.36 for putting up a small brick wash-house not mentioned in the contract, on the ground that it had been pulled down by Cunningham. 3rd, cash allowed a tenant of the house repaired for his inconvenience sustained by the delay in the work $150; 4th, loss of rent of the two houses to be built occasioned by their not being completed in time $256.35; 5th, measurer's bill $15;—making in all $2016.21.

The record then states, "that the testimony of defendants

was taken subject to exceptions;" and that "the plaintiffs objected that the testimony offered to show that Cunningham agreed to do said work was inadmissible, but the court overruled such objection and admitted the same for the purpose for which it was offered." The plaintiffs then offered three prayers in substance as follows:

1st. If the jury find the contract and that Cunningham did the work, &c., on the houses mentioned therein, and that defendants took possession of and completed them and had used and rented them, then the plaintiffs were entitled to recover for the value of the work and labor done by Cunningham at the contract valuation, deducting from the same the cost of completing the contract, (but not deducting any unliquidated damages for loss of rent, or taking down or removing other buildings.)

2nd. The second prayer is identical with the first, leaving out the portion in parenthesis.

3rd. If the jury believe the facts in the two preceding prayers, and that Cunningham, after having done the work, &c., as proved in this case, insisted and contended that he had completed his contract with defendants, who sent another carpenter to take charge of the work and finish the buildings and repairs, and said carpenter did so take charge of the work, then the plaintiffs are entitled to recover so much as the work done and materials furnished by Cunningham are reasonably worth, deducting ———.

All these prayers the court, (LE GRAND, A. J.,) rejected, to which ruling, as well as to the opinion of the court admitting the testimony above mentioned, the plaintiffs excepted. The verdict on the first issue was for the plaintiffs, and on the second, "that the defendants, at the time of laying the attachment in their hands, had not, *nor at any time since* have had, nor *now have*, any goods," &c., of Cunningham in their hands. The judgment was for the defendants and the plaintiffs appealed.

The cause was argued before ECCLESTON, MASON and TUCK, J.

*S. Teackle Wallis* for the appellants, insisted, that as the testimony was taken subject to exception, the appellants can raise here any objection apparent on the record which they might have raised in the court below, and under the exception to the evidence he argued at length the following points:

1st. That Cunningham's statements of the time within which he had contracted to do the work were not admissible to show what was a reasonable time for its completion:—*First.* Because "reasonable time" is an inference of law in the absence of stipulation, and proof of an express contract cannot establish an implied one. A man may contract to do work in an unreasonably short time if he be sufficiently paid for it or consider himself so. *Second.* Because if there was any agreement the parties were bound by that, and no proof of "reasonable time" was admissible. If, therefore, the evidence was admissible at all, it could only be as showing what Cunningham had contracted to do; and it was clearly inadmissible to prove "reasonable time," because the instant a contract was proven, "reasonable time" was no longer a thing in controversy. *Third.* Because if an agreement could be admitted to prove "reasonable time," under any circumstances a parol agreement could not be admitted here where the parties had put their contract in writing. And *Fourth.* The proof of payments made to or for Cunningham was improperly admitted, because none of them were shown to be on account of the contract or work in controversy, and some of them, indeed, were made long after attachment laid. It must be shown they were made on account of the contract; the court cannot *assume* that they were. 2 *Md. Rep.,* 356, *Renwick vs. Williams.*

In reference to the *contract,* the learned counsel said the main questions are:—1st. Could Cunningham recover at all for an incomplete contract? 2nd. Could he recover on a *quantum meruit* for the work done on this contract? On this branch of the case he argued the following points:

2nd. That there being no evidence of Cunningham's having abandoned the work or refused to complete it according to his contract, or of his inability to complete it, or of any request

DECEMBER TERM, 1853.                 125

Coates and Glenn, vs. Sangston, Garn. of Cunningham.

on the part of the appellees that he should do so, the appellees do not show a case in which they had a right to put the houses in the hands of another carpenter without Cunningham's consent, and charge him with such carpenter's work on the premises.

3rd. That even if Cunningham had failed, through his own default, to complete his work in the manner specified in the contract, yet as the work he actually did was valuable to the appellees and was taken and used by them, and availed them to a large extent for their purposes, they were liable to him, and to the appellants in his stead, for the value of such work, to be ascertained by deducting from the contract price the cost to the appellees of finishing the work according to the contract. In all such cases the party who partly performs a contract can recover on a *quantum meruit* the value of the work he has actually done. 1 *Williams' Saunders*, 320, *Pordage vs. Cole*. 1 *Leigh's Nisi Prius*, 78. 10 *East.*, 306, *Ritchie vs. Atkinson*. 9 *Barn. & Cres.*, 386, *Oxendale vs. Wetherell*. 1 *Campbell*, 38, *Farnsworth vs. Garrard*. 1 *Moody & Robinson*, 219, *Thornton vs. Place*. 2 *Crompton & Meeson*, 214, *Chapell vs. Hickes*. 2 *Smith's Leading Cases*, 14. For the American cases to the same effect, see 7 *Pick.*, 184, *Hayward vs. Leonard*. 13 *Met.*, 42, *Snow vs. Inhabitants of Ware*. 6 *New Hamp.*, 492, *Britton vs. Turner*. 5 *G. & J.*, 263, 264, *Watchman and Bratt, vs. Crook*. 1 *Gill*, 65, *Mulliken vs. Boyce*. 11 *How.*, 475, *Van Buren vs. Digges*. This is not an *entire contract* for the parties have divided it—a part of the money was to be paid during the progress of the work; whereas, in the cases relied on by the other side, no part of the money was to be paid until the contract was *completed*. As to entire contracts, see *Story on Contracts*, sec. 22, and 44 *Law Lib.*, 8, 25, 26.

4th. That in any event, the damages for the alleged pulling down of the wash-house, the allowance made to the tenant, and the supposed loss of rent on the other houses were not the proper subject of a discount from Cunningham's claim in this proceeding. The rule for the allowance of damages in such cases is, the amount it will take to put the house in the state

Coates and Glenn, *vs.* Sangston, Garn. of Cunningham.

required by the contract. Consequential damages will not be allowed. 8 *Mees. & Wels.*, 871, *Mondel vs. Steel.* 10 *Adol. & Ellis*, 642, *Francis vs. Baker.* 2 *Cranch*, 342, *Winchester vs. Hackley.* 7 *Wheat.*, 13, *Tayloe vs. Sandiford.* 9 *How.*, 230, *Withers vs. Greene.* 15 *Wend.*, 559, *Sickels vs. Fort.* 21 *Wend.*, 348, *Blanchard vs. Ely.* 1 *Md. Rep.*, 342, *Middlekauff vs. Smith.*

5th. As to the prayers: There is no evidence that the payments proven were on account of the contract or work in controversy in this case, and consequently the first and second prayers were not defective, even if they withdrew these payments from the jury. But upon a fair construction of them there is no such withdrawal. They put the isolated question of *recoupment* of damages, and they would not be inconsistent with a prayer on the other side asking an allowance for these payments, which prayer it would have been competent for the appellees to offer. 1 *Gill*, 143, *Whiteford vs. Burckmyer and Adams.* The third prayer, by leaving a blank, was an application to the court to designate the proper deductions to be made, and the court erred in not making the designation. But whether the prayers are defective or not the question, as to the damages which the appellees could recover from Cunningham, is sufficiently raised by the exception to the proof offered as to such damages.

In reply to the argument on the other side that there was nothing due at the time the attachment was laid and that this was the only question raised by the pleadings, Mr. Wallis argued that the finding of the jury covered the case, and that it was too late now to raise any question as to the informality of the pleadings.

*John Nelson* for the appellees.

This action was instituted on the 13th of November 1848, and the attachment was laid on the same day. The plea is, that the garnishees had not then and have not since had any goods, &c., of Cunningham in their hands, and concludes with a *verification.* The replication to this *tenders* the issue, whether there was any funds in the hands of the garnishees

*at the time the attachment was laid.* This was all the jury had a right to find and was the *only issue* in the case. By the contract it is *conceded* there was then nothing due by the garnishees. It is immaterial whether the payments were made on account of the contract or not, for the whole inquiry is, whether the garnishees were *indebted* to Cunningham. If he was indebted to them they are not his *garnishees.*

There was evidence to show that the garnishees were entitled to credit for the payments they had made, yet the prayers exclude this from the jury. If the court had granted them the jury could not deduct this credit, but only the costs of completing the contract. The garnishees were also entitled to a deduction for the imperfect manner in which the work was done. If Cunningham had brought suit to recover on a *quantum meruit* he would be liable to this set-off, yet the prayers exclude this question also from the jury. Where a prayer undertakes to make a theory it must put in the whole case. The third prayer, in substance, asks the court to instruct the jury the plaintiffs are entitled to recover the whole, deducting nothing, and it is said this is an appeal to the court to fill up the blank; that is, *that the court would try the plaintiffs' case for them.*

But it is said, these questions arise on the exception to the admissibility of the evidence. The record shows no such exception; it states that the evidence was taken subject to exception, but this does not mean that the plaintiff has excepted to it. Only the part is excepted to which relates to Cunningham's statements, and this is the only question on the testimony before this court. The contract is in writing, and contains no stipulation as to the time within which the work was to be done. The law says it must be done in a reasonable time, and we were to prove what was a reasonable time. How were we to show it? We proved it by the strongest of all possible proofs, viz., the declarations of the party who was to do the work. We cannot add a parol agreement to the contract which is in writing, but we can show that he acknowledged he had agreed to do the work in

sixty days as evidence of what he regarded a reasonable time; this is no violation of the contract.

But there never was a dollar in the hands of the garnishees applicable to the debt of Cunningham.   The contract was *abandoned* by him and he cannot recover.   It is not the case of an *ill-done contract*, but of one *voluntarily abandoned*. Could he have maintained a *quantum meruit* for the part he had performed?   An unexecuted contract voluntarily abandoned cannot constitute the foundation of an action.   This is the distinction running through all the cases, and is recognised by the case in 7 *Pick.*, 184, cited on the other side. See also 2 *Mass.*, 147, *Faxon vs. Mansfield.*   13 *Met.*, 50, *Snow vs. Inhabitants of Ware.*   2 *Pick.*, 267, *Stark vs. Parker.*   14 *Mass.*, 282, *Taft vs. Inhabitants of Montague.* These cases show the rule in Massachusetts.   For the rule in New York, see 13 *Johns. Rep.*, 94, *Jennings vs. Camp.* 19 *Do.*, 337, *Reab vs. Moor.*   12 *Do.*, 165, *M'Millan vs. Vanderlip.*   18 *Wend.*, 187, *Champlin vs. Rowley.*   8 *Cowen*, 63, *Lantry vs. Parks.*   The English rule is found in 6 *Dow. & Ry.*, 3, *Bates vs. Hudson.*   8 *Car. & Pay.*, 126, *Rees vs. Lines.*   9 *Barn. & Cres.*, 92, *Sinclair vs. Bowles.*   3 *Taunt.*, 52, *Ellis vs. Hanlen.*   See also 2 *Greenlf. on Ev.*, sec. 104, and the case of *Watkins vs. Hodges, et al.*, 6 *H. & J.*, 38, where the very question at issue is decided.

As to the deduction for rent, the authorities are all against the other side.   Speculative, contingent and uncertain damages cannot be allowed, but the cases all decide, that where the non-performance of a contract respecting real estate keeps the owner out of possession, indemnity for loss, by way of rent, will be allowed.   This is decided in *Middlekauff vs. Smith*, 1 *Md. Rep.*, 341, 342.

TUCK, J., delivered the opinion of this court.

This was a proceeding by attachment, at the instance of the appellants, against Edward Cunningham, as an absconding debtor, which was laid in the hands of the appellees, who appeared as garnishees.   Issues were joined on the pleas of

Coates and Glenn, *vs.* Sangston, Garn. of Cunningham.

*non-assumpsit* by Cunningham and *nulla bona* as to the defendants. The jury having found for the plaintiffs on the first issue and against them on the second, the record was brought to this court upon an exception taken at the trial by the plaintiffs.

It appears that Cunningham had agreed in writing, not under seal, to perform certain work on houses of the appellees, according to the specifications and upon the terms therein stated. No time was mentioned within which it was to be completed. He commenced on the 10th of April 1848, a few days after the date of the contract, and continued the work until October of the same year, after which the witness, who occupied one of the houses during the time that the repairs were made, never saw any more of him. The work was never finished by Cunningham. By the plaintiffs' affidavit, and their own proof, it appeared that he had run away before the 13th November 1848. The appellees, on the 10th of November, three or four weeks after Cunningham had stopped work on the houses, employed another person to complete the repairs. The witness stated that Cunningham's work was very badly done on the front of the house, all the frame being out of square, and the brick houses not near as good work as the house by which they were to have been done, as a pattern. Evidence was offered as to payments made by the appellees and off-sets claimed by them for loss of the rents during the time Cunningham was engaged on the work, which it is unnecessary to state. In relation to this part of the case several questions were elaborately argued by the counsel, involving the character and obligations and remedies under the contract, which, if ruled with the appellants, would not change the decision of the appeal, we shall, therefore, express no opinion upon them.

The first point for our consideration arises upon an objection by the plaintiffs to evidence offered by the defendants. It does not distinctly appear how the question was presented below, nor, indeed, what the precise point was upon which the court pronounced its opinion. The objection was made

17    v.5

"to the admissibility of the testimony offered to show that Cunningham agreed to do the work." Thus broadly stated the objection covered too much, because if allowed it would have excluded the contract under which the work had been undertaken by him, which was clearly admissible. The counsel, however, have argued this point on the assumption, that the objection was made only to Cunningham's declarations as to the time within which he had agreed to finish the work. Thus restricted, we may possibly be reviewing a point not decided by the court below, and hence the propriety of adhering to the record, for although counsel argued the question below as they have here, the court may have overruled the objection on the ground that it embraced evidence that was competent as well as some that was not. 3 *Gill,* 220. In this way injustice is sometimes done to inferior tribunals. It is not a case of defect in the record which may be supplied by agreement, but one where an exception presenting one proposition is said to have been designed to raise another. In the present case, however, we feel no difficulty on this subject, because the objection was properly overruled even when taken in the limited sense in which the appellant intended to apply it.

We gather from the record that it was deemed important to ascertain the time within which Cunningham was to have completed his work. The contract being silent on this point, the law allowed a reasonable time, which could only be ascertained by evidence *de hors.* The defendants proved that Cunningham said, about the time the contract was entered into, and afterwards, that he had agreed to finish the work in sixty days. In disposing of this point we must bear in mind the manner in which it was presented at the trial. There is no question of pleading. It was competent for the defendants to show that they had not violated their agreement with Cunningham by engaging other persons to complete the work before the expiration of the time within which he was to have done it. To this end they offered, by the testimony objected to, to prove that it was to have been finished in·

sixty days, more than that time having elapsed before it was placed in other hands. As a question, merely, of reasonable time, we do not perceive why it should have been rejected. The opinion of any expert would have been received. The fact that Cunningham had said that he was to do the work in sixty days is evidence that he considered that a reasonable time; and his opinion, if not conclusive, was surely admissible against himself. The evidence merely tended to prove a fact, in regard to which the contract was silent.

In 1 *Greenlf. Ev.*, sec. 304, it is said to be well settled, that in a case of simple contract in writing, oral evidence is admissible to show, that by a subsequent agreement the time of performance was enlarged, or the place of performance changed; or that the agreement itself was waived or abandoned. Also, that it is competent to prove an additional suppletory agreement, by parol, by which something is supplied that is not in the contract. The same principle is recognized in *Reed vs. Chambers*, 6 *G. & J.*, 490, where a written contract was entered into in relation to land, and subsequently a verbal agreement was made as to the manner in which the title should be secured to the purchaser, it was held, that the parol agreement "was no variation or change of the written contract for the sale of the land, but only indicated the mode in which the title was to be secured. It was, in effect, to carry the contract into execution, and not to add to, vary, or change it." See also *Watkins vs. Hodges and Lansdale*, 6 *H. & J.*, 38.

The counsel for the appellant insists, that because "the testimony of defendants was taken subject to exceptions," it is competent for him to raise any objection here, apparent on the record, that he might have presented below; and, under this impression, he has discussed several points which we need not decide, because we do not agree that this can be done. We sit as an appellate tribunal, and, since the act of 1825, ch. 117, can only pass upon what may be decided below. A general reservation of such right to object to evidence sometimes facilitates the trial of the cause, and is

allowed for convenience. It secures no right to object here, unless it has been availed of below by specially directing the court's attention to the portions of testimony deemed inadmissible. Then, if the objection be allowed, the court will say to the jury that such proof is not to be considered in the cause; and its ruling either way is the proper subject of appeal.

The plaintiffs' three prayers, we think, were properly rejected. The first and second claimed compensation for the work and labor done by Cunningham "at the rate and valuation of the contract, deducting from the same the cost of completing the contract," not taking any notice of the payments that had been made by the defendants to Cunningham, for which he was certainly entitled to an allowance. The appellants' counsel insists, that there was no evidence of any payments made under this contract, but in this we cannot concur. The defendants offered the contract in evidence, and "also gave in evidence that they had paid as follows to said Cunningham," (exhibiting an account of their payments.) It does not positively appear that these sums were paid on this contract, but in the absence of proof of other dealings between them, it was competent for the jury to have found that they were applicable in the manner claimed by the defendants. *Guy vs. Tams,* 6 *Gill,* 87.

These prayers are also obnoxious to other objections. By them the jury might have compensated Cunningham at the contract price without having found that he had performed his work according to the contract, because the prayers do not submit that question for their consideration. Again, if the jury had been left to find that the work was done according to the contract, the party was not entitled to that rate of payment when the work had not been so done; even if, under any circumstances, he could have claimed payment upon that basis after having abandoned the work in an unfinished state, subjected the other party to loss, and left him to complete it himself, of which there was evidence before the court and jury. The principle of recovery upon a contract is very

Coates and Glenn, *vs.* Sangston, Garn. of Cunningham.

different from that upon a *quantum valebat* or *meruit.* By the latter form of action the plaintiff can claim only what, under all the circumstances, his labor or services, or materials, may be worth. In *Watchman and Bratt, vs. Crook,* 5 *G. & J.,* 263, the court said: "If after work is done, though not pursuant to the contract, the party for whom it is done accepts it, it would seem right and proper that he should pay for it *what it is worth.* This justice would require, and the principles of law do not forbid it." Here the contract stipulated that "all the work should be done in the best manner." We have seen that the work done was very imperfect and that it was at last left unfinished or abandoned, and the owners injured by the delay. It is impossible that the law can sanction a recovery on the ground of contract, when the claimant has neither performed his part of its stipulations nor shown any reason for his non-performance. If the doctrine of these prayers prevailed, it would induce injustice and fraud in the community; consequences which it is the duty of courts of justice, as far as practicable, to prevent. *Ram on Legal Judgments, section 9.*

The third prayer, conceding that it is not imperfect on its face as is insisted by the appellees' counsel, claims compensation according to the value of the work done and materials found by Cunningham. But it does not require the jury to credit the defendants for payments made by them to Cunningham, for which we think it was properly refused. The appellants' counsel, however, suggests, that the counsel who tried the case below left the prayer in a condition for the court to state what deductions it was proper for the jury to allow, and that the court should have granted the prayer, qualified by its view of the law governing the whole case. We do not deem this a ground for reversing the judgment. It is not the duty of courts to instruct the jury unless appealed to for that purpose, and then they may grant or refuse prayers as offered, or they may add qualifications, or reject all the prayers and instruct the jury in their own words. See 2 *Md. Rep.,* 74, *Keener vs. Harrod,* and the cases there cited.

*Judgment affirmed.*