( Decided March 18th, 1859.)

## CHRISTOPHER ANDRE *vs.* WILLIAM BODMAN.

As a general rule, a party should object to the competency of a witness as soon as he is made aware of it, and where the counsel, at the trial, has in his possession the proof of the witness' interest, he ought not to allow the case to proceed without disclosing the objection.

But where testimony was taken under a reservation of the right to object, and though the counsel for the opposite party had in his possession the papers under which the interest of the witness was supposed to arise, yet such interest did not appear till brought out by the parol evidence, the objection to his competency may be made after the proof is all in.

When the interest of a witness depends upon parol proof, clear and uncontradicted, in connection with *documentary* evidence, it is for the *court* to decide whether the witness had a disqualifying interest or not.

Where the interest is of a *doubtful* nature, the objection goes to the *credit* of the witness and not to his *competency.*

A written contract for the building of a house, for a specified sum, was made between the owner and a builder, and then an additional *parol* agreement was entered into, by which the owner was to pay the hands who did the work. HELD:

That this verbal agreement was but a means of carrying the written contract into effect, and was no variation or change of it.

Where a witness for the plaintiff is so situated, that in case the verdict is against the defendant, the record would be admissible in an action by the defendant against him, for a breach of contract, and in case the plaintiff failed, his testimony could be offered as his admissions in a suit by the plaintiff against him, he is interested on either side, and therefore a competent witness.

Where a contractor agreed with the owner to build a house for him, and employed workmen to do the work, and subsequently the contract was abandoned, and the owner agreed to pay the workmen if they would go

31    v. 13.

Andre *vs.* Bodman.

on with the work, the contractor is a competent witness for the work-men, to prove such subsequent work and its value.

If the party, to whom a promise to pay is made, gives up, in consideration thereof, a demand against his original debtor, the promise is an *original* undertaking, but there must be an *extinguishment* of the first debt as a consideration for the new promise.

Where workmen were employed by a contractor, and the latter subsequently abandoned his contract, they may continue the work for the owner, and if they do so at his request, he is liable for the work done after such request was made.

If a mechanic, working for a contractor, is restrained from filing his claim for a lien, by a promise of the owner to pay him, by which his lien against the property was lost, the owner is liable on such promise, though it be not in writing.

A prayer, that if the jury find certain facts therein stated, then the plaintiff is not entitled to recover, "*unless*" the jury further find certain other facts, confines the plaintiff's right to a verdict to the *hypothesis* of the prayer, without reference to the other testimony in the cause.

A prayer which denies the plaintiff's right to recover any part of his claim, when there was evidence which, if believed by the jury, entitled him to recover a part, is erroneous; prayers are also erroneous if there is no sufficient evidence on which to found them.

The time at which, during the progress of a trial, exceptions should be written out and signed, is a matter under the control of the inferior court, and its ruling on that subject cannot be reviewed on appeal.

APPEAL from the Court of Common Pleas.

*Assumpsit* brought on the 12th of May 1855, by the appellant against the appellee, for work done and materials furnished by the plaintiff to the defendant. Plea, *non assumpsit*.

1*st Exception.* The plaintiff, to support the issue on his part, called Justus H. Weber, as a witness, and his testimony being taken subject to all legal exception, he testified, that during the fall and winter of 1854, and January, February and March 1855, the plaintiff had performed certain work, under the written contract produced and proven, as a painter and glazier, and had furnished materials which were used upon a building of the defendant then being erected in the city of Baltimore, and that the value of said work and materials was $170 or $180; that witness had engaged the services of the plaintiff to do the painting and glazing, in accordance with written contracts entered into between witness and defendant,

and that before doing so, the defendant had told him, that he would pay for the work, and he had told the plaintiff, at the time of the employment, that the defendant would pay him; that witness received from the defendant money, at different times, to pay the hands at work on the building, up to the time of witness' inability to go on with his contract, which was about Christmas 1854, and then the defendant agreed to pay the hands who should go on and do the work they had contracted with witness to do.

Then on cross-examination witness proved, that he and Bodman, the defendant, had entered into a contract for the building and finishing the house on which the said work was done and materials furnished, which contract is expressed in the papers set out in the record.

By this contract, which was under seal and dated the 18th of August 1854, Weber agreed to "build and *completely finish*" a dwelling house for Bodman, on or before the 25th of November 1854, according to a plan, the details of which are set out, for a specified sum ($3500) to be paid him by Bodman.

Weber further proved, that notwithstanding this contract, it was the understanding between him and Bodman, that the latter should pay the workmen on the house; that Bodman paid the man who furnished the lumber, the mason, the man who furnished the brick, and the plasterer, and paid to witness only the money to pay the hands doing the carpenter's work, who were under his peculiar control; that about Christmas 1854, witness found he was not able to get along with his contract and failed, and it was verbally agreed between him and Bodman, that he should give it up, which he accordingly did; that he continued to work there some time after without reference to the contract, during which time Bodman paid all the hands, and witness was sick for a few days, and when he got well he found that Bodman had put the house entirely under other management, and he was superseded in the work altogether; that when he gave up the contract, about Christmas, Bodman agreed to pay all the bills then due and those subsequently accruing, and that the plaintiff was then at work on

the premises, and continued at work there some time after, and that he had not been paid any thing for his work and materials, except the sum of $75 which Bodman gave him, at one time, to pay for the glass, and that Bodman never paid witness anything for the painting, or for the purpose of paying the plaintiff.

The plaintiff then proved by Lewis Good, that he was engaged at the carpenter work on said building about Christmas last, when the contract was given up by Weber and he failed; that Bodman told the workmen to go ahead and he would pay; that the plaintiff was there working and continued to work for some time after, and witness thinks his work and materials were worth $185.

The plaintiff then offered in evidence the following paper, which was admitted to have been written by the proper agent of the defendant and sent to the plaintiff, and dated "Baltimore, April 10th, 1855:"

"*Mr. John C. Andre, Sir:*—You will take notice, that I will proceed to have the painting done by you, on house on Fort Avenue, near Fort McHenry, measured on to-morrow morning, the 11th instant, at 9 o'clock, at which time and place you are respectfully requested to attend."

The defendant then proved on his part, by Stein, the signing of the following receipt by the plaintiff, which he also proved had been written by the defendant:

"Received, Baltimore, February 13th, 1855, of William Bodman, seventy-five dollars for J. H. Weber, for glass and on account of painting on the house on Fort Avenue.

(Signed) CHRISTOPH. ANDRE."

He also produced and proved the following notice of lien from the plaintiff to the defendant:

"*To William Bodman, Sir:*—Please to take notice, that I shall file in the Court of Common Pleas, a lien to secure my claim for work done and materials furnished in the construction of your house on Fort Avenue, to your contraction. You will therefore take such steps as you deem necessary to secure yourself on account thereof. Dated this 4th day of April 1855. (Signed) CHRISTOPH. ANDRE."

Andre *vs.* Bodman.

He also proved, that about the 1st of January, a difficulty arose between Bodman and Weber about the lumber bills, when Bodman said he would pay the balance of all the bills out, if Weber would bring them to Bodman, but that Weber never brought them to Bodman; that Weber continued to work there till about the middle of March, but Andre worked there some time longer.

The defendant thereupon excepted to all the testimony of Justus H. Weber, upon the ground that the said Weber, by reason of interest in the result of this suit, is incompetent as a witness in the cause. The court (MARSHALL, J.) sustained this exception, and the whole of said testimony was ruled out and excluded. To this decision of the court the plaintiff excepted.

*2nd Exception.* The defendant then called Stein and proved by him the execution of the building contract between the defendant and Weber, set forth in the testimony of said Weber. Upon all the testimony then remaining the plaintiff asked the following instructions to the jury:

1st. The court instructs the jury, that if they shall believe, from the evidence, there was a contract between the defendant and Weber for the building and finishing the house, and that the plaintiff, in the first place, agreed with Weber to do the work for him; if they shall further find and believe, that the defendant afterwards undertook to pay the plaintiff for his work, whereby the plaintiff looked to the defendant for his payment, and gave up his claim against Weber, he is entitled to recover so much as has not been paid and satisfied.

2nd. The court instructs the jury, that if they shall believe, from the evidence, that the plaintiff did work on the building of the defendant under a contract with Weber, and was not paid for the same, and that he gave notice to the defendant of his intention to claim the benefit of a lien, pursuant to the provisions of the act of 1845, ch. 176, and that upon such notice being given, the defendant promised to pay the plaintiff for the work, and retained the money from Weber, and that relying upon said promise, the plaintiff neglected to file his lien, he is entitled to recover the value of his work, or so much thereof as has not been paid for.

These instructions the court refused to grant, and to this ruling the plaintiff excepted.

*3rd Exception.* The defendant then asked the court to instruct the jury, that if they find that Weber undertook and agreed with defendant, as set out in the sealed instrument offered in evidence by the defendant; and further find, that Weber went on to build said house, under said contract, and that the plaintiff, during such time, did work and furnished materials in the erection of the building referred to in said instrument; and shall further find, that the defendant knew that the plaintiff was at work upon, and furnishing materials for, said building, and made no objection thereto; and shall further find, that the defendant did not give notice to the plaintiff that he was building said house by contract, then the plaintiff is not entitled to recover, unless they further find, that the plaintiff did such work, and furnished such materials, at the express instance and request of the defendant, provided said plaintiff knew that the work was being carried on, and the house being built, at the time he, the plaintiff, did such work, and furnished such materials, by Weber, as the contractor, under said instrument of writing. This instruction the court granted, and to this ruling the plaintiff excepted.

*4th Exception.* The plaintiff then further prayed the court to instruct the jury, on all the facts, that if they shall believe, that Weber had the contract with the defendant, and that said contract covered the work done by the plaintiff, it would not affect the right of the plaintiff, if he had no notice that said contract covered the work done by him, and that he was to look to Weber for his payment. This instruction the court refused to give, and to this ruling the plaintiff excepted.

*5th Exception.* This exception states, in substance, that during the trial, when the decision of the court was made upon the rejection of the evidence, the plaintiff's counsel proposed to write out, at that time, the bill of exceptions, and have it then signed, but the court refused to arrest the progress of the cause for such purpose, and said it must proceed, and that the exception could be drawn and signed before the verdict was rendered. The same thing occurred upon the decisions

of the court, upon the various prayers in the cause. This being on Saturday, the cause was then argued on the facts and submitted to the jury, and the court adjourned, stating that the plaintiff's counsel should prepare his exceptions, and before the verdict was taken the court would examine and sign them. On Monday morning the plaintiff brought his exceptions, and a disagreement arose between the counsel for the respective parties as to the testimony of Weber, when the plaintiff's counsel proposed to send for the witness in order that his testimony should be duly understood, but this the court refused to allow, as being irregular, the jury having agreed, and being then ready to deliver to the court their sealed verdict in the cause. The judge, thinking it more regular that the statement of facts in the exceptions, which harmonised best with its recollections, should be signed by him, proposed to sign such, and suggested to the plaintiff's counsel, that they should have, if they chose, their own views certified in such other form than by the signature of the court, as the law authorised. The judge, therefore, made such alterations in said statements as he deemed necessary and proper, and signed and sealed the exceptions, and then took the verdict. To all which proceedings the plaintiff excepted, and the verdict and judgment being in favor of the defendant, appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON, TUCK and BARTOL, J.

*Jervis Spencer* for the appellant, argued:

1st. That Weber was a competent witness and his whole testimony should have been received. Upon either his position as *agent,* or as having a *balance of* interest, he was competent. 2 *Caine's Rep.,* 83, *Milward vs. Hallett. Addison's Rep.,* 144, *Nessly vs. Swearingen.* 2 *Mass.,* 108, *Cushman vs. Loker.* 4 *Blackf.,* 274, *LeClair vs. Peterson.* 17 *Verm.,* 593, *Abbott vs. Cobb.* 2 *Hill.,* 131, *Starkweather vs. Mathews.* 1 *Strob.,* 33, *Ford vs. M'Kibbon.* 16 *Geo. Rep.,* 410, *Collins vs. Lester.* 3 *Ala.,* 455, *Hallett, et al., vs. O'Brien.* 9 *Pick.,* 298, *Munroe vs. Perkins.* 3 *G. &*

*J.*, 356, *Watts vs. Garrett.* 6 *H. & J.*, 178, *Bank of Columbia vs. Magruder.* 4 *Gill*, 201, *Barry, et al., vs. Crowley. Ibid.*, 223, *Buckingham vs. Clary.* 6 *Md. Rep.*, 541, *Melvin vs. Melvin.* But if this evidence was not good in the whole, that part of it, at least, which proves the work done and materials furnished by the plaintiff, subsequent to the abandonment of the contract between Weber and the defendant, and upon the special instance and request of the latter, was clearly admissible, for as to this the witness had no conceivable interest, and it was, therefore, error to exclude his whole testimony. 2 *Root*, 132, *Shelton vs. Tomlinson.* 3 *McLean*, 229, *Wright vs. Rogers.* 3 *H. & J.*, 179, *Ringgold vs. Tyson.* Again, the objection to the competency of the witness was not made at the proper time. It was too late to exclude it after going into other testimony, and after the evidence was concluded. The objection should have been made and pressed as soon as the interest appeared, and the papers by which it was supposed the incompetency of the witness was established, were in the hands of the counsel for the defendant, during the whole trial.

2nd. That the first prayer of the plaintiff should have been granted; for if the defendant undertook and promised to pay the plaintiff for his work, and the latter was induced by this undertaking and promise, to give up his claim against Weber therefor, this being a detriment to the plaintiff, was a sufficient consideration for the promise of the defendant, and made such promise an *original* and not a *collateral* undertaking within the statute of frauds. 3 *Hill's (S. C.) Rep.*, 41, *Corbett vs. Cochran.* 33 *Maine*, 368, *McKeenan vs. Thissel, et al.* 15 *New Hamp.*, 129, *Warren vs. Batchelder.* 9 *Pick.*, 298, *Munroe vs. Perkins.* For the same reason, and upon the same authorities it is submitted, that the plaintiff's *second* prayer should have been granted, for if relying upon the defendant's promise to pay, the plaintiff neglected to file his lien under the act of 1845, ch. 176, this was an abandonment of a right which clearly constituted a sufficient consideration for the defendant's promise, and made it an original undertaking on his part.

3rd. That the prayer of the defendant in the third exception ought to have been rejected. In the case of *Munroe vs. Perkins*, 9 *Pick.*, 298, already cited, the plaintiff by an agreement under seal, agreed to erect a building at a fixed price, which was not an adequate compensation, and having done part of the work refused to proceed, but upon a parol promise, by the defendant, that he should be paid for his labor and materials, and should not suffer, he went on and finished the building, and it was held, that he was entitled to recover in *assumpsit* upon this *parol* promise. This case clearly overrules the prayer in question, which denies the plaintiff's right to recover for any part of the work, even that done after the contract was *abandoned*, and which the defendant had expressly promised to pay for. The plaintiff's prayer in the fourth exception should also have been granted, for it was only explanatory of what appeared indefinite and obscure in that of the defendant.

4th. That the proceedings relating to the exceptions were erroneous, and not warranted by the law or practice of Maryland, and ought to be overruled. 8 *Md. Rep.*, 226, *Roloson vs. Carson. Act of* 1834, *ch.* 233, *sec.* 11. 1 *Arch. Pr.*, 210. 2 *Tidd.*, 863. 3 *Chitty's Bl.*, 372. *Statute of West.*, 2. 13 *Edward*, 1, *ch.* 31.

*Charles H. Pitts* and *Robert C. Barry* for the appellee, argued:

1st. That Weber's testimony was properly ruled out by the court below, for he was directly interested in the result of the suit. He was under contract with the appellee, to build the house referred to, and *"completely finish"* it: that is, he was to do all the work and furnish all the materials. The contract to do painting and glazing was made with the plaintiff by Weber, and the latter was legally liable to pay him, and the plaintiff considered him so liable. The effect of his testimony would have been to exempt himself from liability, and throw it on the appellee. A judgment recovered by the appellant against the appellee, would have been a good defence for Weber, to a suit by the appellant against him. 1 *Greenlf.*

on Ev., secs. 389 to 397.   6 Md. Rep., 541, Melvin vs. Melvin.

2nd.  The appellant's first prayer was properly rejected, for it assumes, that after Weber had contracted the debt with the appellant, the appellee agreed and undertook to pay the debt. There is no evidence of such agreement and undertaking, and if he did so agree there was no consideration for it, and the agreement was void under the statute of frauds.

3rd.  The appellant's second prayer was also properly re-jected, for there was no evidence in the cause to support it, and if such an agreement or promise, as the prayer assumes, had been made, it would have been void as a parol promise to pay the debt of another, and without any consideration.  11 Md. Rep., 119, Northern Central Railway Co. vs. Prentiss. The appellant's neglect to file his lien in time certainly gave him no claim upon the appellee.

4th.  The appellant's prayer in the fourth exception, assumes that Weber was building the house by contract, and that the work done and materials furnished by the appellant were em-braced by such contract, but does not assume or leave it to the jury to find, that the appellant made his contract with Weber, as agent of the appellee, or that the appellee knew that the appellant was doing work upon, or furnishing materials for, the building.  It was not the duty of the appellee, even with knowledge that the appellant was doing such work, to give notice to him that this work was embraced in Weber's con-tract, and that he must look to Weber for payment.  The ap-pellee having no knowledge that the appellant was doing the work, of course could not be expected or required to give any notice about the matter.

5th.  The point raised by the exception to the court's refu-sal to arrest the progress of the cause, and permit the appel-lant's counsel to prepare and have his bill of exceptions signed, is decided against the view of the appellant in the case of Roloson vs. Carson, 8 Md. Rep., 208.

TUCK, J., delivered the opinion of this court.

The first exception was taken by the plaintiff, to the exclu-

Andre vs. Bodman.

sion of the testimony of Justus H. Weber, who was examined in his behalf, subject to exceptions on the part of the defendant, and who was objected to as incompetent, on the ground of interest, after all the testimony in the cause had been received. The appellant contends, that it was then too late to object. As a general rule, a party should except to testimony as soon as he is made aware of the witness' incompetency, and where the counsel, at the trial, has in his possession the proof of his interest, he ought not to allow the case to proceed without disclosing the objection. *Baugher vs. Duphorn*, 9 *Gill*, 325. In this case the defendant's counsel had the contracts between himself and Weber, under which the interest was supposed to arise; but he could not know that the claim of the plaintiff was for the same work which the witness had by the contracts agreed to perform, until the parol evidence made it appear. *Hallet, et al., vs. O'Brien*, 3 *Ala.*, 455. Moreover, the examination commenced under a reservation of the right to object, which relieved the defendant from the operation of the rule in its strictness; and, although it might not in all cases warrant the party objecting in reserving his point until after all the proof is taken, we think that, in the present case, it was not made too late. *Coates & Glenn vs. Sangston*, 5 *Md. Rep.*, 121.

In determining the question presented, we must not overlook the state of the trial at the time the objection was made. Other evidence than Weber's had been received, from which it clearly appeared to the court, that he had failed before finishing the defendant's house, and that he had abandoned or given up the contract; and that this plaintiff, and others, continued to work on the house at the instance and request of the defendant, who promised to pay them, and who also said, he would pay the balance of all the bills out, if Weber would bring them in, which, however, he never did. Upon this state of proof, in connection with Weber's, and the documentary evidence, the court was called upon to decide, whether the witness had a disqualifying interest. *Trasher vs. Everhart*, 3 *G. & J.*, 242. *Funk vs. Kincaid*, 5 *Md. Rep.*, 404. If we look alone to Weber's testimony, it is by no means

clear that he was incompetent.  He states expressly, that, although he had the contract with Bodman, and employed Andre to do the painting and furnish the materials, yet, before doing so, the defendant had told him, and he had informed the plaintiff, that the defendant would pay for the work; that it was the understanding that Bodman should pay the hands, (some of whom. he designates as having been paid by him;) and that he had never received any thing on account of the painting, or for the purpose of paying the plaintiff.  This arrangement may have been made for the accommodation of Andre, in procuring workmen on the credit of Bodman, as well as for the latter's security in discharging so much of the sum which he had agreed to pay for the work; it was but a means of carrying the contract into effect.  *5 Md. Rep.*, 131, *Coates & Glenn vs. Sangston.*  6 *G. & J.*, 490, *Reed vs. Chambers.*  The testimony on this question, as we have said, was for the court, and, considering that of Weber alone without reference to the rest, we think it might well have been doubted whether the plaintiff ever credited him at all.  If he did not he could have no cause of action against the witness; and if it was even doubtful, whether he did or not, his evidence ought not to have been excluded, whatever the jury might have thought of its value; for, "where the interest is of a doubtful nature, the objection goes to the credit of the witness and not to his competency."  6 *Md. Rep.*, 541.  1 *Greenleaf's Ev.*, sec. 390.  3 *G. & J.*, 355.

But suppose he was interested, was it not on either side? If a verdict against the defendant would protect Weber from a suit at the instance of Andre, for the same cause the record would be admissible in an action by Bodman against him for breach of the contract, to show the amount recovered by Andre, as part of the damages resulting from the breach, and Bodman might also recover the costs adjudged against him in favor of Andre.  1 *Greenleaf's Ev.*, secs. 393, 394, 395.  *Buckingham vs. Clary*, 4 *Gill*, 223.  And if the present plaintiff should fail in this action, the declarations of Weber, of having employed Andre to do the work, and of the value of his work

Andre *vs.* Bodman.

and materials, might be offered, as his admissions, in a suit by Andre against him.

Again, if the contract with Bodman was rescinded, as stated by Good and Stein, although he might not be answerable for what the plaintiff had earned up to that time, under the supposed agreement with Weber, can it be doubted, that he would be liable for the work and materials subsequently done and supplied at his instance; for it does not appear that he ever paid even that portion of the plaintiff's claim? If Andre looked, in the first place, to Weber for payment, and, after doing part of the work, passed from his service to that of Bodman, on an agreement with the latter, he could have no claim against Weber beyond the work actually done at that time; and, as to the subsequent work, its value might as well be proved by him as any other witness. What possible interest could he have in that inquiry? In this view, therefore, he was competent to prove, at least, part of the claim, even conceding, which we do not, that he was incompetent to prove the abandonment of the contract, and the defendant's promise to pay for the prior work. The objection to his evidence should have been overruled.

Upon all the evidence remaining, after that of Weber had been excluded, the plaintiff offered two prayers, which were rejected. If the first of these had been confined to a recovery for the work done by the plaintiff, at the request of Bodman, on the failure of Weber to complete his contract, as given in evidence, there could have been no objection to it. There is no testimony to show, that the defendant even paid for the work and materials done and furnished at his own request, and we suppose, as the witnesses speak of the work of the plaintiff having amounted to about one hundred and eighty dollars, they meant all his work and materials both before and after his employment by Bodman, and that this prayer was designed to embrace this whole amount. It impliedly concedes, that the defendant would not be liable for any work and materials, in respect to which the plaintiff had, in the first place, agreed with Weber, as contractor for the building, because the alleged undertaking not being in writing it could not

be enforced; but, to avoid the effect of the statute of frauds, the prayer requires the jury to find that the defendant afterwards undertook to pay the plaintiff, in such manner that he looked to the defendant, alone, for his pay, and gave up his claim against Weber. We have no doubt that a party may become liable without reducing it to writing, where the person to whom the promise is made gives up a demand against his original debtor. The very consideration of the second promise, and the necessary operation of that agreement, is to discharge the first liability at the moment of creating the new one, so that the creditor cannot be said to have two persons charged for the same debt, and if there is only one person liable, there can be nothing to which his promise can be said to be collateral. It must become an original undertaking between the parties to it, the first debt being discharged. "Where, distinct from the original liability, there is a new and superadded consideration for the promise, moving between the party promising and him to whom the promise is made, in such case it is an original undertaking, as in *Williams vs. Leper,* 3 *Burr.,* 1886, where the defendant, having got possession of goods, which were subject to distress for rent in arrear, promised the landlord (the plaintiff) to pay him the rent, if he would desist from distraining." *Elder vs. Warfield,* 7 *H. & J.,* 396. The principle on which the distinction rests is concisely stated by Mr. Justice Buller, in *Tatlock vs. Harris,* 3 *D. & E.,* 180. If A, B and C agree that A shall pay C a sum that B owes him, the debt of the latter is extinguished, and an original debt created between A and C. See also, *Wilson vs. Coupland,* 5 *Barn. & Ald.,* 228. *Cuxon vs. Chadley,* 3 *Barn. & Cress.,* 591. *Wharton vs. Walker,* 4 *Barn. & Cress.,* 163. *Warren vs. Batchelder,* 15 *New Hamp.,* 129. *Corbett vs. Cochran,* 3 *Hill, (S. C.,)* 41. *McKeenan vs. Thissel,* 33 *Maine,* 368. *Comyn on Cont.,* 59. The cases show that there must be an extinguishment of the first debt as a consideration for the new promise. For the purpose of the exception now under consideration, Weber's evidence having been excluded, must be disregarded, and, without intimating that it would lead to a different conclusion—that being for the jury—we do not find

sufficient foundation for the prayer.  If there was an original promise or agreement on the part of Weber to pay the plaintiff, and the latter agreed, afterwards, to go on with the work for the defendant, it does not follow, that Weber was thereby released from what he owed the plaintiff on the work previously done.  There is evidence that the plaintiff did subsequently look to the defendant, but nothing to show that his discharge of Weber was any part of the consideration for Bodman's promise to pay if he would go on with the work. When the building was suspended under the contract between the defendant and Weber, the plaintiff was discharged from his agreement with Weber, and was at liberty to continue the work for Bodman.   This case is similar in principle to that of the *Northern Central Railway Co. vs. Prentiss*, 11. *Md. Rep.*, 119, where it was held, that the company was liable for medical services rendered a person who had been injured on the road, it rendered at the request and on the credit of the company, although the physician had been attending the person at the instance of another party; the liability of the company being restricted to the services rendered after the request made by it.

Much that we have said applies also to the plaintiff's second prayer.  If the appellant was restrained from filing his claim for a lien, by a promise of the defendant to pay him, by which his lien against the property was lost, the defendant would be answerable on his promise; but the record does not show this.  3 *Burr.*, 1886.  It may be, that the plaintiff stopped his proceedings under the expectation of being paid by the defendant; but there is not sufficient evidence on the subject to warrant the assertion in the prayer, that upon the notice given, the defendant promised to pay the plaintiff, and retained the money from Weber; and that plaintiff neglected to file his lien, in reliance on that promise.   See *Keefer vs. Mattingly*, 1 *Gill*, 182.   For these reasons the plaintiff's prayers were properly rejected.

As we understand the defendant's prayer, it is obnoxious to two objections; *First*, It does not discriminate between the work done under the original agreement, alleged to have been made by Andre with Weber, and that supplied after he had

given up his contract with the defendant. It denied a verdict for the plaintiff for any amount, although the jury might have been satisfied that the defendant owed him for the work done at his express request, after Weber's failure, unless they should find a promise to pay, predicated on the hypothesis of the prayer, which overlooked all the evidence in reference to the abandonment of the contract, and the defendant's undertaking at that time. It is true, that if they had found the plaintiff's work, from the beginning, had been done on the promise of Bodman to pay him, as stated by Weber, and that he had given credit, in the first instance, to Bodman, the plaintiff would, under the instruction, have been entitled to a verdict, as upon an original undertaking by Bodman to pay for that of which he was to have the benefit; but the only testimony on that point was Weber's, and the court in granting the prayer, on a given state of facts, after having rejected the only witness who proved the facts, in effect denied the plaintiff's right to recover any part of the claim, when there was evidence which, if believed by the jury, entitled him to recover a part. 1 *Gill,* 151. The word "unless," confined the plaintiff's right to a verdict to the hypothesis of the prayer, without reference to the other testimony in the cause. *Cole vs. Hebb,* 7 *G. & J.,* 24, 42.

Again, the prayer required the jury to find, as a condition of a verdict for the plaintiff, that he was aware, at the time of doing the work, that Weber was building the house under the contracts between him and Bodman, when it did not appear that Andre ever saw, or had knowledge of the terms of the contracts, until produced by the defendant at this trial. With these views of the defendant's prayer, it becomes unnecessary to say any thing of the plaintiff's third, offered in explanation of what was said to be indefinite and obscure in that of the defendant.

As to the time and circumstances of signing the exceptions, though the question is unimportant, inasmuch as the judgment will be reversed, we can express no opinion other than that given in *Roloson vs. Carson,* 8 *Md. Rep.,* 226. It is a mat-

ter under the control of the inferior court, whose ruling cannot be revised on appeal.

*Judgment reversed and procedendo ordered.*
(Decided March 22nd, 1859.)