JUNE.

## WATKINS vs. HODGES and LANSDALE.

Where there is a subsisting special agreement, a party to it cannot recover on general counts; he must declare on the special agreement, and that being the *gist* of the action, it must be stated in the declaration.

A declaration on a special agreement must state all the essential parts of the agreement.

Where an agreement formed an *entire contract*, to enable the plaintiff to recover on it, he must prove a performance or tender to perform every thing required by it on his part to be performed.

If a contract be rescinded by the parties after its part performance by the plaintiff, he may recover for the part performance on a general count.

A subsequent parol agreement to postpone the delivery of articles under a contract without seal, is not a waiver of the contract, but only an enlargement of the time for its performance.

APPEAL from *Baltimore* county court. *Assumpsit* by the appellant against the appellees. The declaration contains ed four counts: The *first* for goods sold and delivered. The *second* on a *quantum meruit* for goods sold and delivered. The *third* on an *insimul computassent;* and the *fourth* on a special agreement. The last count is as follows, viz. "And whereas' heretofore, to wit, on the 3d of February 1813, the defendants bargained for and bought of the plaintiff, and the plaintiff, at the special instance. and request of the defendants, then and there sold to the defendants, at the county aforesaid, a large quantity, to, wit, sixty hogsheads of tobacco, whereof 45,000 weight was to be crop and 15,000 weight second tobacco, at the rate. or price of three dollars for every hundred weight of the crop or first quality tobacco, and, two dollars and fifty cents for every hundred weight of the second quality tobacco, and also one dollar for each cask containing the same, to be delivered by the plaintiff to, the defendants, and inspected at *Beard's* warehouse in *Anne-Arundel* county, viz. at the county aforesaid, on or before the tenth day of May then next ensuing, and to be paid for by the defendants on the twenty-fifth day of December then next ensuing; and in consideration thereof, and that the plaintiff at the like special instance and request of the defendants, had then and there undertaken, and faithfully promised the defendants, to deliver the said tobacco at the time and place aforesaid, they the defendants then and there undertook, and faithfully promised the plaintiff to

accept the said tobacco of him the plaintiff, and to pay him for the same on the day aforesaid; and although the plaintiff afterwards, and before the tenth day of May then next ensuing as aforesaid, viz. on the fifteenth day of March, at *Beard's* warehouse in *Anne-Arundel* county, to wit, at the county aforesaid, did deliver to the defendants eleven hogsheads of crop tobacco, amounting in the whole to 10,239 weight, and ten hogsheads of second tobacco, amounting in the whole to 9025 weight of the same, together with 21 casks containing the same; and although the plaintiff was ready and willing, and then and there offered and tendered to deliver the balance or remaining part of said sixty hogsheads of tobacco, so as aforesaid contracted for, to the defendants, and then and there requested the defendants to accept the same; yet the defendants, not regarding their said promises and undertakings, did not, nor would, at the said time when they were so requested, or at any time before or afterwards, accept the balance or remaining part of the said sixty hogsheads of tobacco, of and from him the plaintiff, neither have they, nor either of them, paid the plaintiff for the whole of the said sixty hogsheads of tobacco, or for the twenty-one hogsheads delivered to them, or for any part or parcel of said tobacco, but then and there wholly refused and neglected so to do, and do still refuse to pay the same. Nevertheless," &c. The general issue was pleaded, and at the trial the plaintiff proved the delivery of twenty-one hogsheads of tobacco, eleven of which were at three dollars, and the residue at two dollars and fifty cents per *hogshead*, on or about the latter part of March 1813. The defendants then offered in evidence a special agreement, which was admitted to be in the hand writing of the plaintiff, and is in these words: "I have this day sold to Messrs. *Hodges* and *Lansdale* 60 hogsheads of tobacco, (of my make and now on hand,) 45 thousand weight of it crop, and 15 thousand weight second, at $3 per hundred for the crop, and $2½ per hundred for the second, and one dollar for each cask, to be paid for on the 25th day of December next. The tobacco to be delivered and inspected at *Beard's* Point warehouse between this and the 10th of May next.

*Nicholas Watkins,* of *Thos.*"

3 February, 1813.

The defendants also offered in evidence the deposition of *George Allen*, taken by consent, who proved, "that early in April 1813, he was requested by *Hodges* and *Lansdale* to bring up in his boat the tobacco purchased by them of *Nicholas Watkins*; that they delivered to him a letter dated the 3d April 1813, directed to *Watkins*; that he according- ly called on *Watkins*, and delivered the letter to him about three days after the date of it; that *Watkins* told the de- ponent, there were 21 hogsheads of tobacco at *Beard's* warehouse which he wished him to carry to *Lansdale* and *Hodges*, the balance of the tobacco purchased by them he could not deliver, being too busy at that time on the farm; that when the deponent returned he would haul him a load down; that the deponent expected to be back in about a week from that time, and the load would be from 40 to 43 hogsheads. This deponent further states, that when he was coming up, the *British* were in the bay, and were close behind him." The letter mentioned and referred to in the forego- ing deposition, dated at *Baltimore* the 3d of April, 1813, and directed to the plaintiff, is hereinafter set forth. The de- fendants further offered in evidence the deposition of *Rich- ard Welsh*, taken by consent, who proved, "that late in the fall of 1813, he was at the plaintiff's tobacco house, where he was getting out wheat; that whilst there, *Wm. M. Lans- dale*, one of the defendants, rode up, and requested the plaintiff to deliver the tobacco, or the balance of the tobac- co, this deponent does not precisely recollect which, and that the plaintiff replied that he could not deliver it, as he was busy in getting out his wheat, and that his family de- pended on that for their living." The defendants also pro- ved, that a quantity of tobacco, about 40 hogsheads, was sold by the plaintiff at a much higher price in the spring of 1815. The plaintiff then offered in evidence the three following letters, admitted to be in the hand writing of the defendants, and addressed to the plaintiff, viz. 1st. "*Balti- more*, 9th March 1813. Dear Sir, We have authorised Mr. *Harrison* to send up your tobacco in his boat, and will thank you to deliver it to him as fast as possible. You will oblige us if you will carefully take the samples of all you have to inspect, and send them by the boat." 2d. "*Balti- more* 3d April, 1813. Dear Sir, We wish you to forward by capt. *Allen* as much of your tobacco as he can receive. As the balance of your crop is now to inspect, you will

1823.
Watkins
vs
Hodges, &c

oblige us by taking samples of every hogshead, and sending with the tobacco. From what we can see through the heads of those here, we think them nothing extraordinary, and hope the yellow is all to come. You will please to dispatch capt. *Allen* as soon as possible." 3d. *Baltimore*, 9th April, 1813. Dear Sir, The alarming news received to day makes it necessary for me to countermand the orders I gave capt. *Allen* respecting your tobacco. You will on the receipt of this, stop carrying down another hhd. of your tobacco, and if the capt. has any on board, you will particularly oblige me by telling him to have it put back in the shed of the warehouse, and wait to receive from us further orders." On these facts the defendants moved the court to direct the jury, that the plaintiff was not entitled to recover; which direction the court, [*Hanson* and *Ward*, A. J.] gave to the jury. The plaintiff excepted, and verdict and judgment being against him, he appealed to this court.

The cause was argued before BUCHANAN, MARTIN, and STEPHEN, J.

*Magruder*, for the appellant. It is contended, on the part of the appellant, that for the 21 hogsheads of tobacco proved to have been sold and delivered by him to the appellees, he was entitled to recover. Evidence was given at the trial, that part of the tobacco was delivered. The appellees, by their letter of the 9th of April 1813, countermanded their previous orders, and directed that the balance should not be sent *until further orders* from them. No further orders were given by them until the fall of the year. The appellant was under no obligation to deliver the tobacco until it was paid for. The appellees should have tendered payment. The appellant can recover for the tobacco delivered, and the appellees' right of action against the appellant is for the nondelivery. The last letter of the appellees did away the contract. If the appellees had sued the appellant for nondelivery, they could not have founded their action on the contract. They cannot set off the nondelivery of the tobacco in this action.

*Heath*, for the appellees. A written contract was entered into between the parties on the 3d of February 1813, whereby the plaintiff in the court below was to deliver to the defendants at *Beard's* warehouse, 60 hogsheads of tobacco of the plaintiff's make, and on hand, 45,000 of it to

be crop, and the residue second tobacco, at stipulated prices, to be delivered between that day and the 10th of May following, to be paid for on the 25th of December following. Part of the tobacco was delivered, and on the 9th of April the defendants order a suspension of the delivery of the tobacco, in consequence of the arrival of the enemy in the bay, to which the plaintiff does not object. In the autumn they requested a delivery of the residue of the tobacco, which the plaintiff declines, but subsequently sells it, and brought this action. 1. The declaration contains four counts, three general, and one special. On neither of them was he entitled to recover. General counts cannot be proper where there is a special contract still existing and unexecuted. *Weston vs. Downes, Doug.* 23. *Power vs. Wells, Cowp.* 818, recognized in *Towers vs. Barrett,* 1 *T. R.* 133. It is not pretended that this contract has been executed by the plaintiff. It has not been rescinded or annulled, as the acts of the parties prove. No intention was indicated by the defendants to rescind or annul it, if indeed they could, but one party cannot rescind a contract except where, by the terms of it, privilege is given to do so. *Hunt vs. Silk, 5 East,* 448. 1 *Pow. on Cont.* 412. The plaintiff acquiesced in the suspension; he made no objection to or refusal of it, and gave no notice to the defendants that he considered the contract rescinded. The contract here is in part executed, and the parties could not be placed in their original situation. Where that is the case general counts cannot be supported. *Giles and others vs. Edwards, 7 T. R.* 178. This was nothing more than a suspension of time for the delivery, which was not important. Change of the time does not create a new, or annul the old contract. *Cuff and others vs. Penn,* 1 *Maule & Selw.* 21. This contract then is unexecuted and still open, of course upon the general counts the plaintiff cannot recover.

2. The special count is bad on three grounds—1st. Because of a variance between the contract declared on and that proved. 2d. Because of a variance between the breach alleged and that proved; and 3d. The tender is not alleged to have been made at the proper time. 1st. As to the first variance—The declaration states the contract to be for 60 hogsheads of tobacco, and the proof is 60 hogsheads of the plaintiff's make, and on hand. This is a sub-

stantial variance. There was a good reason operating with the defendants for the insertion of the words, that the tobacco should be of the plaintiff's make, and then on hand. *Anonymous*, 1 *Ld. Raym.* 735. *Penny vs. Porter*, 2 *East*, 2, (note.) *Brown vs. Knill*, 2 *Brod. & Bring.* 395, *(6 Serg. & Low.* 167.) *Bull. N. P.* 145. 2d. The plaintiff in his declaration avers a tender, and there is no such proof; but the proof is directly the reverse. Where a tender is averred, it must be proved. *Jones vs. Barkley*, 2 *Doug.* 694, per *Buller*, J. *Chitty's Plead.* 318. 1 *Selw. N. P.* 94, 95, 96, 99, 100. "I am ready to pay the debt, or to perform the duty," is no tender. 6 *Bac. Ab.* tit. *Tender*, &c. (B 1.) 447. The party must do every thing necessary, &c. *Clark vs. Tyson*, 1 *Stra.* 504. 3d. The tender as averred was not in proper time. *Cro. Eliz.* 73. *Plowd.* 172, 174. 12 *Mod.* 421. *Lancashire vs. Killingworth*, 1 *Ld. Raym.* 686. The contract here is, that the money was to be paid after the delivery of the tobacco; the tobacco was to be delivered before the 10th of May, and it was to be *paid for* in December following. The party must aver and prove performance; this is a condition precedent. *Thorpe vs. Thorpe*, 1 *Salk.* 171, and 1 *Ld. Raym.* 666. *Pordage vs. Cole*, 1 *Saund. Rep.* 320, *(and notes.)* The postponement of the delivery of the tobacco does not destroy the contract. *Cuff and others vs. Penn*, 1 *Maule and Selw.* 21. *Morrison vs. Galloway*, in this court, at December term 1809.

*Magruder*, in reply. The plaintiff did not rely on his last count in the declaration. The court directed the jury that he could not recover on any of the counts. He may recover for the value of the tobacco delivered. The only question is, whether there is any thing in the contract which prevents a recovery after the letter of the 9th of April 1813 was received by the plaintiff? The tobacco delivered was in strict compliance with the contract. Where a contract has been partly performed, it may be so situated, as not to be fulfilled, and yet the party may recover so far as he has performed. The letter amounted to a waiver of the contract. It was similar to a contract to build a house, where there is an alteration in the plan. The alteration is a waiver, and the workman may recover for the work done. So here, as far as the tobacco was delivered, the plaintiff may recover.

1823.

Watkins
vs
Hodges &c.

The opinion of the court was delivered by.

MARTIN, J. This is an action on the case, instituted by the plaintiff to recover the price or, value of twenty-one hogsheads of tobacco, sold and delivered to the defendants. The declaration contains four counts. 1st. A general *indebitatus assumpsit.* 2d. A *quantum meruit.* 3d. An *insimul computassent.* And 4th. On a *special agreement.* The plaintiff offered evidence to prove the delivery of twenty-one hogsheads of tobacco to the defendants, some time in March 1813. The defendants then read to the jury a special agreement, admitted to be in the hand writing of the plaintiff, in the following words: "I have this day sold to Messrs. *Hodges* and *Lansdale.* 60 hhds. of tobacco, *of my make, and now on hand,* 45 thousand weight of it crop, and 15 thousand weight second, at $3 pr. hundred for the crop, and $2½ pr. hundred for the second, and $1 for each cask, to be paid for on the 25th day of December next; the tobacco to be delivered and inspected at *Beard's Point* warehouse, between this and the 10th of May next. 3d. Febry. 1813. *Nicholas Watkins* of. *Thos.*"

It is an established rule of law, that where there is a subsisting special agreement, a party to it shall not recover on general counts. He must declare on the special agreement, and that being the gist of the action, it must be stated in the declaration. *Weston vs. Downes, Doug.* 23. *Hulle vs. Heightman,* 2 *East,* 145. 1 *Esp. Dig.* 263, (139.) If then this contract was in force between the parties, the plaintiff could not recover in this action. He could not recover on the three first counts, which are general, nor on the fourth. For altho' it is founded on the special agreement, it has omitted some of its essential parts. The agreement is, that the tobacco sold and to be delivered, "*should be the make of the plaintiff, and on hand at the time the contract was made.*" This is an important stipulation on the part of the plaintiff, and not mentioned in the declaration. But if the declaration had strictly pursued the agreement, the plaintiff was not entitled to recover from the evidence. The agreement formed an *entire* contract, and to enable the plaintiff to recover on it he must prove a performance, or tender to perform every thing required by it on his part to be performed, *Cutter vs. Powell* 6 *Term.*

1823.

Watkins
vs
Hodges, &c.

*Rep.* 520. The agreement is, that he shall deliver sixty hogsheads of tobacco to the defendants by the 10th of May 1813; the evidence is, that he delivered twenty-one hogsheads in March, and no attempt is made to show a delivery or tender of the balance.

If the original contract was rescinded by the parties, after a part performance of it by the plaintiff, either by waiving the performance of the residue of the contract, or entering into a new one, so inconsistent with the first, that they could not stand together, the plaintiff might recover for the part performance on a general count. To bring himself within this principle of law, he offered three letters from the defendants in evidence to the jury, the last of which only, dated the 9th of April 1813, is connected with this part of the case. In that letter he states, "the alarming news received to day makes it necessary for me to countermand the orders I gave, capt. *Allen* respecting your tobacco. You will, on the receipt of this, stop carrying down another hogshead of your tobacco, and if the capt has any on board, you will particularly oblige me by telling him to have it put safely back in the shed of the warehouse, and wait to receive from us further orders." Here then is a proposition, on the part of the defendants, that the plaintiff should not deliver the tobacco by the time stipulated in their contract, but that he should keep it until they demanded a delivery of it. Whether the plaintiff assented to this proposition, was a fact, under a different course of proceedings, that ought to have been submitted to the jury, and evidence was offered to prove that he did assent to it. But it is perfectly immaterial in this case, for it has been frequently determined, that a subsequent parole agreement to postpone the delivery of articles under a written contract without seal, is not a waiver of the contract, but only an enlargement of the time, for the performance of it. In *Warren vs. Stagg*, referred to in 3 *Term. Rep.* 591, *Buller*, J. held, that an agreement to extend the time for the performance of a contract, was not a waiver, but a continuance of the original contract. In *Keating vs. Price*, 1 *Johns. Ca.* 22, the same doctrine was maintained by the court. That was an action founded on a special agreement *in writing*, by which the defendant promised to deliver to the plaintiff a quantity of staves, on or before the 1st of May 1796. *Parole evidence* was offered to prove the ag-

knowledgment of the plaintiff, that he had. made the contract as before stated, but that he had agreed to extend the time for delivering them, until the next spring. A verdict was taken for the plaintiff, subject to the opinion of the court on several points, and among others, whether the time of performing the contract could be extended by a subsequent agreement between the parties. The court said this being originally a *simple* contract, it was competent for the parties to enlarge the time of performing it. An extension of the time may often be essential to the performance of executory contracts, and there can be no reason why a subsequent agreement for that purpose should not be valid; and directed a nonsuit to be entered. So also in the case of *Cuff & others vs. Penn*, 1 *Maule & Selw.* 21, an action was founded on a special agreement *in writing*, by which the plaintiffs stipulated to deliver to the defendant a quantity of bacon at certain times particularly mentioned in the agreement. After a part of the bacon had been delivered under this contract, a parole agreement was made between the parties, that the time for the delivery of the residue should be extended. The plaintiffs, after the time had elapsed at which they were to deliver the bacon under the contract in writing, tendered the residue to the defendant, who refused to receive it, alleging the first contract was at end. But Lord *Ellenborough* determined that the subsequent parole agreement did not substitute a new contract, in the place of the first, but was a dispensation only with the performance of the original contract, in respect of the delivery of the bacon at the stipulated times, and this was confirmed by the court, on a motion to enter up a nonsuit. The plaintiff, in the case now before us, if he did not consent to the enlargement of the time stipulated in the written contract, ought to have delivered the tobacco, or tendered a delivery, on or before the 10th of May 1813. If he did assent to extend the time he ought then to have delivered it, or made a tender, at some subsequent period, and his declaration ought to have contained a count setting out the contract, and a performance, or tender to perform, on his part.

JUDGMENT AFFIRMED.