## THE AMERICAN TOWING AND LIGHTERING COMPANY OF BALTIMORE vs. THE BAKER-WHITELEY COAL COMPANY.

*Tug boats: not common carriers; not insurers. Towing contracts: evidence. Oral contracts: province of jury. Contracts: subsequent impossibility. Prayers: withdrawing facts from jury. Evidence: subsequent conditions; proceedings in other courts. Witnesses. Experts.*

The hiring or chartering of a tug for a certain purpose does not necessarily imply a contract on the part of the owner of the tug that the purpose for which it was hired shall be accomplished.                                    p. 673

Where there is a dispute as to the terms of an oral contract it is the province of the jury to find what the contract was.
                                             p. 674

A prayer is erroneous which withdraws from the consideration of the jury a question which is proper for them.        p. 674

It is the duty of the owner of tugs engaged in the towing business to furnish a seaworthy vessel of sufficient capacity and power and properly equipped with the necessary appliances.                                    p. 674

But the tugs engaged in towing are not common carriers or insurers and in the discharge of their duties they are only required to exercise reasonable skill and carefulness.    p. 675

An engagement of a tug to tow does not impose either an obligation to insure or the liability of common carriers; the burden is always on him who alleges breach of such a contract to show either that there has been no attempt at performance, or that there has been neglect, or unskillfulness as to duty in performance.                    p. 675

The owners of vessels of cargoes towed by a tug can not maintain any action for the loss of either against the tug or her owners without proving negligence on their part.        p. 675

Where a tug was engaged to tow certain scows from one port to another and the scows were lost by being abandoned in a

Syllabus.

heavy storm, when the hawsers parted, it was *held* that if the Towing Company exercised reasonable care and skill in providing the hawsers it was entitled to recover (the contract price for the time engaged in towing), notwithstanding the jury should find that the hawser parted and that by reason thereof the scows were lost.                    p. 676

If the tug (or Towing Company) performed its part of the contract it is entitled to recover the contract price less the amount of any loss the defendant sustained by reason of its negligence.                    p. 677

If a towing company contracts by an absolute undertaking to tow scows from one port to another specified port and fails to do so, then it is not entitled to recover unless it can show that performance was waived or prevented by the defendant, or was prevented by such an impossibility as the law recognizes as a sufficient excuse.                    p. 677

If a thing contracted to be done is possible in itself, it is no excuse that the promissor became unable to perform it by causes beyond his control; he should have guarded himself by the terms of his contract.                    p. 678

Where the continued existence of a given person or thing is essential to the performance, impossibility of performance arising from the perishing of the person or thing without the fault of the promissor will excuse the performance. In general, subsequent impossibility of performance is no excuse.
                    p. 679

This principal has no application to such a case as this when scows were lost and ceased to exist through the act of the plaintiff in abandoning them at sea.                    p. 680

In a suit by a towing company against the owners of certain scows, which it had been employed to tow from port to port, the statements of the agent of such owners as to the liability of the towing company in no way affects the owners' liability and are not properly admitted in evidence.                    p. 680

In a suit by a towing company against the owners of scows which it had been employed to tow, and which were lost, as it was claimed, because of the defective condition of the hawsers furnished by the towing company, testimony intro-

. duced by the defendants to show the condition of the haw-
sers several months after the accident is admissible in evi-
dence.                                                              p. 680

In such a suit evidence of a legal proceeding in another Court
growing out of the same matter, but between different par-
ties, is not admissible in evidence.                               p. 681

Where witnesses are examined as experts their testimony is
inadmissible if the questions asked of them omitted important
facts without which the witnesses could not express opin-
ions based on the evidence in the case.                            p. 681

*Decided March 26th, 1912.*

Appeal from the Court of Common Pleas of Baltimore
City (BOND, J.).

The following are the prayers that were offered by the
plaintiff and the defendant, respectively, and the action of
the trial Court on each:

*Plaintiff's 1st Prayer.*—The plaintiff prays the Court to
instruct the jury that if they find from the evidence in the
case that the plaintiff entered into a contract with the
defendant, whereby the plaintiff chartered the tug Britannia
to the defendant for so long a time as the defendant might
require the services of the said tug; that if they further find
that the defendant, by the terms of said charter, was to pay
the plaintiff the sum of one hundred and twenty-five dollars
per day for each day that the plaintiff should require the
services of said tug; and if the jury further find that the
defendant did use the services of the said tug for ten days,
but has not paid anything to the plaintiff for the said serv-
ices of the said tug, then the verdict must be for the plain-
tiff, unless the jury further find that the defendant lost, by
reason of the negligence or fault of the plaintiff, a greater
sum than that which the jury may find was due by the
defendant to the plaintiff under the charter as above set
forth. (*Granted.*)

*Plaintiff's 2nd Prayer.*—The plaintiff prays the Court to instruct the jury that if they find a verdict for the plaintiff under the plaintiff's first prayer, then they may allow the plaintiff the sum of one hundred and twenty-five dollars for each of the ten days set forth in the plaintiff's first prayer, less whatever sum the jury may find that the defendant lost by reason of the negligence or fault of the plaintiff, with interest in the discretion of the jury.   (*Granted.*)

*Plaintiff's 3rd Prayer.*—The plaintiff prays the Court to instruct the jury that if they find from the evidence in the case that the plaintiff entered into a contract with the defendant, whereby the plaintiff hired the tug Britannia to the defendant at the sum of one hundred and twenty-five dollars per day to bring certain scows from Charleston to Baltimore; and shall further find that in accordance with the said contract the Britannia went from Baltimore to Charleston and did there take the said scows in tow and start with them to Baltimore; and shall further find that the said scows were lost off Currituck by the said tug Britannia and were destroyed, and if the jury shall find that said loss and destruction of the said scows was not due to any negligence on the part of the said tug Britannia, her master or crew; and if the jury shall find that the defendant has paid nothing to the plaintiff for the services of the said tug Britannia in towing said scows, then the verdict must be for the plaintiff.   (*Granted.*)

*Plaintiff's 4th Prayer.*—The plaintiff prays the Court to instruct the jury that if they find a verdict for the plaintiff under the plaintiff's third prayer, then, in assessing the damages they are to allow the plaintiff such sum as they may find from the evidence in the case that the services of the Britannia were reasonably worth from the time that she left Baltimore until the time of the loss of the scows, with interest in the discretion of the jury.   (*Granted.*)

*Plaintiff's 5th Prayer.*—The plaintiff prays the Court to instruct the jury that if they find from the evidence in the case that the plaintiff entered into a contract with the

defendant, whereby the plaintiff chartered the tug Britannia to the defendant for so long a time as the defendant might require the services of said tug in going to Charleston, South Carolina, and bringing from there to Baltimore certain scows; and if they further find that the defendant, by the terms of said charter, was to pay to the plaintiff the sum of one hundred and twenty-five dollars per day for each day, that the plaintiff should require the services of said tug as aforesaid; and if the jury further find that the defendant did use the services of said tug for ten days, but has not paid anything to the plaintiff for the said services of said tug, then the verdict must be for the plaintiff, unless the jury further find that the defendant lost, by reason of the negligence or fault of the plaintiff, a greater sum than that which the jury may find to be due by the defendant to the plaintiff under the charter as above set forth. (*Granted.*)

*Plaintiff's 6th Prayer.*—The plaintiff prays the Court to instruct the jury that if they find a verdict for the plaintiff under the plaintiff's fifth prayer, then they may allow the plaintiff the sum of one hundred and twenty-five dollars for each of the ten days set forth in the plaintiff's fifth prayer, less whatever sum the jury may find that the defendant lost by reason of the negligence or fault of the plaintiff, with interest in the discretion of the jury. (*Granted.*)

*Plaintiff's Special Exception to Defendant's 2nd Prayer.*—The plaintiff specially excepts to the granting of the defendant's second prayer, because there is no evidence in the case that "the contract between the parties was that the plaintiff's tug 'Britannia' should proceed from Baltimore to Charleston, and from there tow two scows to Baltimore." (*Overruled.*)

---

*Defendant's 1st Prayer.*—At the request of the defendant, the Court instructs the jury that if they find that the contract between the parties was that the plaintiff's tug "Britannia" should proceed to Charleston, and there take two mudscows and tow them to Baltimore, the compensation

to the plaintiff to be at the rate of $125 a day from the time
the tug left Baltimore until she returned to Baltimore with
the scows, the tug to furnish the hawser, and that directions
were given to the plaintiff that the scows should be delivered
at Woodall's Dry Dock, then this constituted an entire con-
tract, and the verdict of the jury must be for the defendant,
the uncontradicted evidence being that the scows were not
towed to Baltimore from Charleston, but were lost at sea.
(*Granted.*)

*Defendant's 2nd Prayer.*—At the request of the defend-
ant, the Court instructs the jury that by the uncontradicted
evidence in this case, the contract between the parties was
that the plaintiff's tug "Britannia" should proceed from
Baltimore to Charleston, and from there tow two scows to
Baltimore, at the compensation of $125 a day from the time
to elapse between the departure of the tug from Baltimore
and the return of the tug to Baltimore, the tug to provide the
hawser; and if the jury further find that the scows were
lost while being towed by the plaintiff's tug, by reason of the
failure of the plaintiff to provide a good and sufficient
hawser, or failure of the plaintiff's agent in command of
said tug to exercise reasonable care and prudence in the
performance of said contract of towing whereby the scows
were lost, then the verdict of the jury must be for the defend-
ant, even though they further find that the parting of the
hawser was in part contributed to by the fact that the scows
were filled with water.   (*Refused.*)

*Defendant's 3rd Prayer.*—At the request of the defend-
ant, the Court instructs the jury that in entering upon the
performance of the contract of towing between the parties
in this case, it was the duty of the plaintiff and its agents
to exercise reasonable skill and care in everything relating to
the undertaking, having due regard to the extent of the
voyage and any *reasonably to have been anticipated* inci-
dents of the sea to be traversed, to include not only safe and
proper navigation of the tug on the journey, but the furnish-
ing of sale, sound and suitable appliances and instrumental-

ities for the service to be performed; and if the jury find
that the plaintiff, or its agent in charge of the tug, failed
to exercise reasonable skill and care in said towing, or the
plaintiff, or its agents, failed to exercise such skill and care
to provide sufficient appliances for towing, as aforesaid, in
consequence of either or both of which the scows being towed
were lost, and thereby the defendant sustained a loss greater
than the plaintiff's claim, then the verdict of the jury must
be for the defendant. (*Granted as modified.*)

NOTE.—The modification of said prayer, consisting in the
addition by the Court of the portions thereof hereinabove set
out, indicated in script or underscored.

*Defendant's 4th Prayer.*—At the request of the defend-
ant, the Court instructs the jury that if the jury finds the
loss of the scows was occasioned by the plaintiff's failure to
*exercise ordinary skill and care* to provide good and suffi-
cient equipment for the towing of said scows, or by the negli-
gence of the plaintiff's agents in command of the tug Britan-
nia in performing said contract of towage; and if the jury
further find that the loss sustained by the defendant by
reason of the loss of said scows was greater than the claim
of the plaintiff in this case, then the verdict of the jury must
be for the defendant. (*Granted as modified.*)

NOTE.—The modification of said prayer, consisting in the
addition by the Court of the portions thereof hereinabove set
out, indicated in script or underscored.

*Defendant's 5th Prayer.*—At their request of the defend-
ant; the Court instructs the jury that if the jury finds that
the hawser provided by the plaintiff for towing the scows
was defective, *and that the plaintiff's agents in charge of the
tug or the provision of said hawser should, in the exercise of
ordinary care and skill, have anticipated such defective con-
dition,* and that in consequence of said defective condition
broke while towing said scows, and the latter were thereby
lost, then the verdict of the jury must be for the defendant,
the evidence being uncontradicted that the loss thereby sus-

tained by the defendant exceeded the claim of the plaintiff. (*Granted as modified.*)

NOTE.—The modification of said prayer, consisting in the addition by the Court of the portions thereof hereinabove set out, indicated in script or underscored.

*Defendant's 6th Prayer.*—At the request of the defendant, the Court instructs the jury that if the jury finds that the plaintiff hired or chartered the tug to the defendant for the purpose of towing the scows, and that the negligence of the plaintiff, or its agents in charge of the tugboat, while doing the towing caused or contributed to cause the loss of the scows, and by reason thereof the defendant sustained a loss equal to or greater than the plaintiff's claim, then the verdict must be for the defendant.  (*Granted.*)

*Defendant's 7th Prayer.*—At the request of the defendant, the Court instructs the jury that if they find from the evidence that the plaintiff's tugboat "Britannia" was engaged by the defendant to go from Baltimore to Charleston, and from there to tow certain scows to Baltimore, the tug to provide the hawser, and the compensation to be at the rate of $125 per day for the round trip, and further find that, by general custom pertaining to towage contracts, the compensation for the tug's services was payable only upon the completion of the towage contract and the delivery of the scows towed, then their verdict must be for the defendant. the evidence being uncontradicted that the scows were not towed to Baltimore, but were lost at sea.  (*Granted.*)

*Defendant's 8th Prayer.*—At the request of the defendant, the Court instructs the jury as follows:

1. By the uncontradicted evidence, the contract between the parties was that the plaintiff's tug "Britannia" should proceed from Baltimore to Charleston, and from there tow two scows to Baltimore, the tug to provide the hawser, and the compensation to be $125 a day for the round trip.

2. That this was an entire contract, and that the plaintiff was not entitled to compensation for said towing services until it had fully performed the same by towing said scows

to Baltimore, unless failure to complete said services was occasioned by the interference or fault of the defendant.

3. By the uncontradicted evidence, the plaintiff did not tow said scows to Baltimore, but the same were lost by reason of the parting of the hawser furnished by the plaintiff.

4. Therefore the verdict of the jury must be for the defendant, there being no evidence legally sufficient to show any interference by or fault on the part of the defendant as an excuse for the failure of the plaintiff to perform its contract. (*Refused.*)

*Defendant's 9th Prayer.*—The defendant prays the Court to instruct the jury that as it appears by the uncontradicted evidence in the case that the plaintiff contracted to tow certain scows from Charleston to Baltimore and failed to do so, and as there is no evidence legally sufficient to show any legal excuse for such failure, therefore the verdict of the jury must be for the defendant. (*Refused.*)

*Defendant's 10th Prayer.*—At the request of the defendant, the Court instructs the jury that the plaintiff has produced no evidence legally sufficient to entitle the plaintiff to recover under the pleadings in this case, and, therefore, the verdict must be for the defendant. (*Refused.*)

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, BURKE, THOMAS, PATTISON, URNER and STOCKBRIDGE, JJ.

*J. Morfit Mullin* and *W. Calvin Chesnut* (with whom were *Gans and Haman* on the brief), for the appellant.

*J. Craig McLanahan* (with whom was *E. McClure Rouzer* on the brief), for the appellee.

THOMAS, J., delivered the opinion of the Court.

This is the second appeal in this case, a judgment in favor of the appellee having been reversed and a new trial awarded in 111 Md. 504.

Suit was brought on the common counts, and a special count for services rendered by the plaintiff's tug Britannia

in towing certain scows at the request of the defendant. The defendant, in addition to the general issue plea, pleaded, first, payment; second, that the towing for which the plaintiff seeks to recover was so carelessly and negligently done that the scows were wrecked and the defendant sustained loss in excess of the plaintiff's claim, and, third, that the defendant contracted to tow the scows from Mobile to Baltimore, and "employed the plaintiff's tug Britannia to do a portion of said towing;" that said tug was not properly equipped for that purpose, and used an improper cable or hawser, and by reason thereof said hawser broke and the scows were wrecked; that afterwards the owners of the scows "filed a proceeding in admirality in the District Court of the United States for the Eastern District of Virginia, and a decree was entered therein against the tug Britannia," and that in the adjustment and settlement of the loss the Britannia was compelled to pay by reason of its said negligence the claim of the plaintiff was allowed and deducted.

The payment, negligence and allowance of the plaintiff's claim set up in the pleas were denied by the plaintiff, and the trial resulted in a verdict and judgment in its favor, from which judgment the defendant has again appealed.

During the trial the defendant reserved eleven exceptions, all of which relate to rulings on the evidence except the eleventh, which brings up for review the action of the Court below on the prayers.

It appears from the evidence that the defendant was under a contract with the Standard Dredging Company to tow four scows belonging to said Dredging Company from Mobile to Baltimore, and that the scows were accordingly towed by the defendant's tug Buccaneer from Mobile to Charlestown. The defendant then engaged the plaintiff's tug Britannia to bring two of the scows from Charleston to Baltimore, the other two being towed by the Buccaneer. The plaintiff agreed to furnish the hawser. Shortly after the Britannia left Charlestown with the scows in question, and notwithstanding the weather was fair and the sea

smooth, the hawser parted twice, and two or three days later, during a storm, the hawser again parted, and the captain of the Britannia determined to abandon the scows, and went to Norfolk. The scows, several days after they were abandoned by the plaintiff's tug, were found by their owner on the beach below Cape Henry, and were a complete wreck. The defendant offered evidence tending to show that the hawser was defective, and that the failure of the plaintiff to furnish a proper hawser was due to the plaintiff's negligence, while the plaintiff produced evidence to show that the scows leaked, and were, therefore, more difficult to tow, and that the parting of the hawser the last time was due to their condition and the storm they encountered.

The contract for the services of the Britannia was made by Edward H. Ray, the treasurer of the plaintiff, and Robert H. Bradford, secretary and treasurer of the defendant. It was not in writing, and there is a dispute as to its terms. Ray states that Bradford called him "up on the telephone and said he had two mud lighters in Charlestown, and that he would like to charter the tug Britannia to go down there and bring them to Baltimore;" and that he, Ray, "agreed to hire to Mr. Bradford, of the American Towing and Lightering Company, the Britannia, to go to Charlestown, at the rate of $125 a day, to bring——." The witness was interrupted at this point, and later, when asked if he had stated all the conversation with Bradford, said he thought he had, and that "the object was for the Britannia to go there and tow the two lighters from Charleston to Baltimore." Bradford states: "I called up Mr. Ray, secretary and treasurer of the Baker-Whiteley Coal Company, and asked him if his tug Britannia was available to go to Charleston, S. C., and tow two mud scows to Baltimore. After repeating the question several times on the phone, I explained to him what was required, and after some dickering on the price, I agreed on the price of $125 a day. I told Mr. Ray that I had to confer with the owners

AM. TOW., ETC., CO. vs. BAKER-W. C. CO. 671

Md.] Opinion of the Court.

of the scows, but I would advise him later." He states further that "The time was to begin when the tug Britannia sailed and to cease on delivery of the scows in Baltimore."

Evidence was introduced by the defendant tending to show that there was a general and uniform custom prevailing in the towing business, according to which unless the tow is delivered at its destination the tug is not entitled to any compensation, except when payment in case of loss of tow is specially provided for in the contract, while evidence was produced by the plaintiff to show that according to the established custom if the tug is hired by the day the owner is entitled to compensation whether the tow reaches its destination or not. The defendant also offered in evidence the answer of the plaintiff in the case of the Standard Dredging Company against the Britannia, in the District Court of the United States, in which the plaintiff stated that it was under a contract with the American Towing and Lightering Company, the defendant in this case, to tow the scows from Charleston to Baltimore, and the plaintiff offered evidence of certain alleged admissions of Mr. Bradford to the effect that under the contract in question the plaintiff was entitled to recover for the services rendered notwithstanding its failure to deliver the scows.

At the close of the case the plaintiff offered six prayers, which were granted by the Court below, and the defendant offered ten, all of which (with some modifications of the third, fourth and fifth) were granted, except the second, eighth, ninth and tenth, the last three of which sought to take the case from the jury on the ground that there was no evidence in the case to justify a verdict for the plaintiff.

By the plaintiff's first prayer the jury were told that if they found that the plaintiff chartered the tug Britannia to the defendant for so long a time as the defendant might require the services of the tug, and that the defendant agreed to pay for such services one hundred and twenty-five dollars a day; and further found that the defendant did use the tug for ten days, but did not pay the plaintiff, then

the plaintiff was entitled to recover, unless the jury further found that the defendant, by reason of the negligence of the plaintiff, lost a greater sum than the amount due the plaintiff under said contract. Plaintiff's second prayer instructed the jury that if they found for the plaintiff under its first prayer, then they were to allow the plaintiff one hundred and twenty-five dollars a day for each of the ten days that the defendant used the plaintiff's tug, less whatever sum the jury should find the defendant lost by reason of plaintiff's negligence, with interest in the discretion of the jury. Plaintiff's fifth and sixth prayers are practically the same as its first and second, except that the fifth prayer is based upon the finding of the jury that the plaintiff chartered the tug Britannia to the defendant for so long a time as the defendant might require the services of said tug in going to Charleston and bringing the scows from there to Baltimore. By the plaintiff's third prayer the jury were instructed that if they found "that the plaintiff entered into a contract with the defendant, whereby the plaintiff hired the tug Britannia to the defendant at the sum of one hundred and twenty-five dollars per day to bring certain scows from Charleston to Baltimore;" and further found that in accordance with the contract, the Britannia went from Baltimore to Charleston and did there take said scows in tow and start with them to Baltimore; and further found that the scows were lost by the Britannia and destroyed, and that such loss and destruction was not due to any negligence on the part of the Britannia or her master or crew; and should further find that the defendant had not paid the plaintiff for the services of said tug, then their verdict should be for the plaintiff, and its fourth prayer directed the jury that if they found for the plaintiff under the third prayer, the plaintiff was entitled to recover what the jury should find the services of the Britannia were reasonably worth from the time she left Baltimore until the time the scows were lost, with interest in the discretion of the jury.

The defendant's exception to the granting of these prayers is based primarily on its contention that all of the evidence shows that the contract sued on was one by which the plaintiff undertook and contracted to tow the scows from Charleston to Baltimore, and having failed to do so it can·not recover, and the further contention that there is no evidence in the case to show what the services rendered by the tug Britannia were reasonably worth. We think the evidence to which we have already referred is a suffi-cient answer to the first of these contentions. Certainly if the statement of the treasurer of the plaintiff that he hired the Britannia to the defendant, at one hundred and twenty-five dollars a day, to go to Charleston for the pur-pose of towing the scows to Baltimore, and the statement of the secretary and treasurer of the defendant, after the Britannia had returned to Baltimore without the scows, that the plaintiff's bill should have been for eleven days instead of ten, constituted the only evidence in the case of the terms of the contract, it would not be contended that the agents of the plaintiff and defendant, who made the con-tract, intended that the plaintiff was not to receive com-pensation for the use of the tug unless the scows were delivered in Baltimore. The hiring or chartering of a tug· for a certain purpose does not necessarily imply a contract on the part of the owner of the tug that the purpose for which it was hired shall be accomplished. The question, however, was practically decided on the former appeal, where this Court refused to hold that the uncontradicted evi-dence showed that the plaintiff contracted to tow the scows to Baltimore. It is true that the evidence in this case is not exactly the same, and that the Court on the first appeal, relied very largely on the statement of Ray that he "refused to agree" on behalf of the plaintiff "to tow the scows from Charleston to Baltimore." But the Court also referred to the statement of Bradford that he "hired from Mr. Ray the Britannia to proceed to Charleston, South Carolina, for the purpose of towing the scows to Baltimore for the

compensation of $125 a day," as evidence tending to show that the plaintiff did not contract to tow the scows from Charleston to Baltimore. The statement of Ray at the last trial does not differ substantially from the statement of Bradford at the first trial, which we have just referred to, and to which, as we have said, JUDGE SCHMUCKER referred as evidence corroborating the statement of Ray that he did not contract to tow the scows to Baltimore. There being a dispute as to the terms of the oral contract, we must hold as we did in 111 Md. 504, that it was for the jury to find what the contract was, and that there was therefore no error in the rejection of defendant's eighth, ninth and tenth prayers. We see no objection to the first, second, fifth and sixth prayers of the plaintiff, and we do not understand the legal propositions presented by them to be questioned by the appellant. The only ground of its exception being that they were not justified by the evidence in the case.

The defendant's second prayer instructed the jury that according to the uncontradicted evidence in the case, the contract between the plaintiff and the defendant was that the plaintiff's tug Britannia "should proceed from Baltimore to Charleston, and from there tow two scows to Baltimore, at the compensation of $125 a day—the tug to provide the hawser," and if they found "that the scows were lost while being towed by the plaintiff's tug by reason of the failure of the plaintiff to provide a good and sufficient hawser," etc., their verdict should be for the defendant. Apart from the objection that the prayer withdraws from the jury the question of what the contract was, it asserts the proposition that if the scows were lost by reason of the failure of plaintiff to provide a good and sufficient hawser, the plaintiff is not entitled to recover. It may be said that the authorities agree that ordinarily it is the duty of the owner of tugs engaged in the towing business to "furnish a seaworthy vessel of sufficient capacity and power, and properly equipped with the necessary fittings and appliances." 38 *Cyc,* 567-9 ; *Baker-Whiteley Co.* v. *Neptune Nav. Co.,* 120 Fed. 249 ;

*In re Britannia,* 148 Fed. 499; *The Quickstep,* 9 Wallace, 665. But we think it equally clear that tugboats engaged in towing are not common carriers or insurers, and in discharging their duties are only required to exercise reasonable skill and care. 38 *Cyc.* 562; *Baker-Whiteley Co. v. Neptune Nav. Co., supra; Steamer Webb,* 14 Wallace, 406; *Trans. Line v. Hope,* 95 U. S. 297; *In re Moran,* 120 Fed. 556; *The J. P. Donaldson,* 167 U. S. 599; *In re Ravencourt,* 103 Fed. p. 674. In the case of *The Tug Moran, supra,* the Court held that there was no ground upon which the owner of a tug could be regarded as an insurer of the tug's equipment. In the case of the *Steamer Webb, supra,* the Court said: "It must be conceded that an engagement to tow does not impose either an obligation to insure, or the liability of common carriers. The burden is always upon him who alleges the breach of such a contract to show either that there has been no attempt at performance, or that there has been negligence, or unskillfulness to his injury in the prformance." In the case of the *L. P. Dayton,* 120 U. S. 351, the Court states that "As between the tow and its tug, the Dayton, the contract of towage involves a responsibility for loss upon the tug only by reason of the want of ordinary care; for a tug is not a common carrier, and does not insure the safety of its tow." And in the still later case of the *J. P. Donaldson, supra,* the Supreme Court of the United States said: "A general ship carrying goods for hire, whether employed in internal, in coasting or in foreign commerce, is a common carrier; and the ship and her owners, in the absence of a valid agreement to the contrary, are liable to the owners of the goods carried as insurers against all losses, excepting only such irresistible causes as the act of God and public enemies. *Liverpool Steam Co. v. Phoenix Ins. Co.,* 129 U. S. 397-437. But a tug and her owners are subject to no such liability to the owners of the vessels towed, or of the cargoes on board of them. The owners of those vessels or cargoes cannot maintain any action for the loss of either against the tug or her

owners, without proving negligence on her part. As was said by Mr. Justice Strong, and repeated by the present Chief Justice, 'An engagement to tow does not impose either an obligation to insure, or the liability of common carriers. The burden is always upon him who alleges the breach of such a contract to show either that there has been no attempt at performance, or that there has been negligence or unskilfulness to his injury in the performance. Unlike the case of common carriers, damage sustained by the tow does not ordinarily raise a presumption that the tug has been in fault. The contract requires no more than that he who undertakes to tow shall carry out his undertaking with that degree of caution and skill which prudent navigators usually employ in similar services.' " If the plaintiff, in the case at bar, exercised reasonable care and skill in providing the hawser used in towing the scows, it was entitled to recover notwithstanding the jury found that the hawser parted and that by reason thereof the scows were lost. In other words, the plaintiff's right to recover was not defeated unless the tug or plaintiff was guilty of negligence in failing to exercise reasonable care and skill in providing the hawser. It follows that there was no error in the refusal of the Court below to instruct the jury, that if they found that the plaintiff did not furnish a good and sufficient hawser, and that by reason thereof the scows were lost, their verdict should be for the defendant, and what we have said in regard to that feature of defendant's second prayer, disposes of its exception to the modifications of its third, fourth and fifth prayers, which modifications were to the effect that the plaintiff was not guilty of negligence unless it failed to exercise reasonable skill and care in the discharge of its duties.

This brings us to a consideration of the plaintiff's third and fourth prayers. By plaintiff's first and fifth prayers the jury were instructed that if the Britannia was hired by the day for such time as was desired for the purpose of towing the scows, the plaintiff was entitled to recover for

the number of days it was so employed, at the contract price, unless the jury found that the defendant had, by reason of plaintiff's negligence, sustained · a greater loss than the amount due for such services, and by the defendant's first prayer the jury were told that if they found that the contract between the parties was that the plaintiff's tug Britannia should proceed to Charleston, and there take charge of the scows and tow them to Baltimore, the compensation to be at the rate of $125 a day from the time the tug left Baltimore until she returned to Baltimore with the scows, and the hawser to be furnished by the plaintiff, then the contract was an entire contract and the verdict should be for the defendant, as the evidence shows that the scows were not towed to Baltimore. Yet by the plaintiff's third and fourth prayers the jury were instructed that if they found that the plaintiff hired the Britannia to the defendant to bring the scows from Charleston to Baltimore, and that the Britannia took the scows in tow and started with them to Baltimore, then the plaintiff was entitled to recover whatever such services were reasonably worth, unless the jury found that the scows were lost by reason of plaintiff's negligence. If the propositions presented by the plaintiff's first, second, fifth and sixth prayers, and defendant's first prayer are sound, and we think they are, then there was manifest error in the granting of plaintiff's third and fourth prayers. ¦ If the plaintiff performed its part of the contract, then it was entitled to recover the contract price, less the amount of any loss the defendant sustained by reason of the plaintiff's negligence. If, on the other hand, the contract of the plaintiff was an absolute undertaking to tow the scows from Charleston to Baltimore, and it failed to do so, then the plaintiff was not entitled to recover at all, unless it could show that performance was waived or prevented by the defendant or was prevented by such an impossibility as the law recognizes as a sufficient excuse. *Brantly on Contracts,* 217 and 221; *Watkins* v. *Hodge,* 6 H. & J. 38; *Denmead* v. *Coburn,* 15 Md. 29; *Hamilton* v. *Warfield,*

2 G. & J. 482; *Coates* v. *Sangston*, 5 Md. 121; *Gill* v. *Vogler*, 52 Md. 666; *North·Bros. and Strauss* v. *Mallory*, 94 Md. 316; *South Bldg. Asso.* v. *Price*, 88 Md. 155; *Kribs* v. *Jones*, 44 Md. 406; *P. R. R. Co.* v. *Reichert*, 58 Md. 261; *Milske* v. *Steiner Mantle Co.*, 103 Md. 235; *The Madras, Law Rep, Prob. Div.* 1898, N. S. 94. In the case *Penna R. R. Co.* v. *Reichert, supra,* this Court said: "If the thing promised be possible in itself, it is no excuse that the promisor became unable to perform it by causes beyond his own control, for it was his own fault to run the risk of undertaking unconditionally to fulfill a promise, when he might have guarded himself by the terms of his contract." And in the case of *The Madras, supra*, it was said: "It is clear that the contract to tow into Sharpness Dock was not fulfilled, and that owing to the circumstance that a fog came on, by the fault of no one the vessel stranded on a rock. If the matter had stopped there that would have been a simple question of an indivisible contract which cannot be fulfilled owing to circumstances for which neither party is to blame. Under these circumstances I think there could be no question that the law holds neither party liable to fulfill that contract, or liable to consequences for not fulfilling it. I think it is the case substantially of *Appleby* v.  *Myers*, L. R. 2 C. P. 651, and follows closely the analogy of cases as to freight, and those cases where the contract, not severable in its nature, is entered into as a whole and cannot be completed through no fault of any one, and neither party has any rights against the other, subject, of course, always to this, that if there is a new contract to be implied by the acts of the parties, that gives rise to new rights." Counsel for the plaintiff state in their brief that plaintiff's third prayer "is based on the theory that, whether the contract was divisible or entire, yet if the performance of the contract depended on the continued existence of a certain object which was not directly under the control of the plaintiff, and that object, through no fault of the appellee was destroyed, then the appellee would be entitled to recover

on a *quantum meruit* for the amount of work done up to the time of the destruction of the property." ¿Where the continued existence of a given person or thing is essential to the performance of the contract, impossibility of performance arising from the perishing of the person or thing without default will excuse the performance," and such cases are said by Mr. Brantly to be exceptions to the general rule that impossibility of performance arising subsequent to the formation of the contract, is no excuse for failure to perform. *Brantly on Contracts,* 261 and 266. The rule and exceptions are recognized in the case of *Butterfield* v. *Byron,* 153 Mass. 517, 27 N. E. 667, where JUDGE KNOWLTON says: "It is well established law that where one contracts to furnish labor and materials, and construct a chattel, or build a house, on land of another, he will not ordinarily be excused from performance of his contract by the destruction of the chattel or building without his fault before the time fixed for the delivery of it. *Adams* v. *Nichols,* 19 Pick. 275; *Wells* v. *Calnan,* 107 Mass. 514; *Dermott* v. *Jones,* 2 Wall. 1; *School Dist.* v. *Bennett,* 27 N. J. Law, 513; *Thompkins* v. *Dudley,* 25 N. Y. 272. It is equally well settled that where work is to be done under a contract on a chattel or building which is not wholly the property of the contractor, or for which he is not solely accountable, as where repairs are to be made on the property of another, the agreement on both sides is upon the implied condition that the chattel or building shall continue in existence; and the destruction of it without the fault of either of the parties will excuse performance of the contract, and leave no right of recovery of damages in favor of either against the other." If in this case the plaintiff, after having made a contract to go to Charleston and tow the scows to Baltimore had found on reaching Charleston that the scows had in the meantime been destroyed, and were no longer in existence, there would be some ground for the contention that this case comes within the exception referred to. But no such facts are found in the record. On the contrary all of the evidence shows that

the failure of the plaintiff to bring the scows to Baltimore was not due to the fact that the scows were lost and ceased to exist, *but that the scows were lost because the plaintiff abandoned them at sea.* The principle upon which the exception rests has, therefore, no application to the facts of this case. We have not overlooked the fact that on the former appeal, referring to the plaintiff's prayers, we said "we see no reason for their rejection," etc. But the prayers of the plaintiff were not before the Court for review (the appeal having been taken by the defendant, and the plaintiff's prayers having been rejected by the Court below), do not appear to have been discussed by counsel, and were not fully considered by the Court.

The first exception is to the refusal of the Court below to allow the treasurer of the plaintiff to state on cross-examination whether Captain Eaton, the president of the Standard Dredging Company, did not deny liability for the towing. What Captain Eaton may have said in reference to the liability of the Standard Dredging Company could not in any way have reflected upon the question of the defendant's liability.

The second and third exceptions are to the admission of the testimony of the captain of the Britannia and of the witness Sanford as to the condition of the ends of the hawser when they were inspected by them about three months after the loss of the scows. It appears from other evidence in the case that these ends of the hawser had been kept in the lazaret of the tug and were taken out and placed on deck by the witness Whitten, who was deck hand on the Britannia at the time of the accident, and both he and Captain Dunn testified that they were in the same condition they were when they broke. We see no objection to this evidence. If, as contended by the defendant, the hawser was defective at the time it parted, there was no way by which the condition of the ends could have been improved, and there is no reason why the defendant should object to evidence of their condition several months after the accident.

The fourth and fifth exceptions are to the rejection by the Court below of statements of the witnesses of what was said by the engineer of the Britannia in regard to the condition of the tug's machinery. There is no evidence to show, and we do not understand the defendant to contend that the loss of the scows was due to any defect in the tug's machinery. The evidence, therefore, was not material or admissible.

The seventh exception was to the refusal of the lower Court to admit in evidence the record in the case between the Standard Dredging Company and the Britannia in the United States Court, and we think the evidence was properly excluded. The defendant was not a party to that suit, and the only part of the record admissible for any purpose in this case, were the admissions contained in the answer filed on behalf of the Britannia, which were subsequently read in evidence. We see no objection to the evidence referred to in the eighth and tenth exceptions. The questions objected to contain all the evidence reflecting upon the matter in regard to which the witnesses were required to express an opinion, and the questions were not otherwise objectionable.

But we think there was error in the rulings of the Court in the sixth and ninth exceptions. The questions there asked not only did not contain all of the evidence bearing upon the matter to which they referred, but they omitted important facts, without which the witnesses could not express opinions based upon the evidence in the case. The witnesses were asked as experts, to state on the facts set out in the questions, what caused the parting of the hawser, without including in the questions the fact the hawser had parted twice under the circumstances stated in the evidence before the scows were finally abandoned. The *Berry Will Case,* 93 Md. 560; *B. C. & A. Ry. Co.* v. *Trader,* 106 Md. 635.

Because of the errors in the granting of plaintiff's third and fourth prayers, and in the rulings in the sixth and ninth exceptions, the judgment of the Court below must be reversed, and the case remanded for a new trial.

*Judgment reversed, with costs, and a new trial awarded.*