# THE BALTIMORE & OHIO RAILROAD COMPANY

## vs.

## ROBERT W. CARTER.

*Contracts: prevented by act of defendant; liability on common
counts. Time: when not of essence.*

C. had a contract with the B. & O. R. R. Co. for the furnish-
ing of certain pilings; the railroad was to inspect the pilings
and to furnish cars for them; it did not do so, and the pilings
were carried away by a freshet; *held*, that C. was entitled to
recover for the pilings so lost, less the cost of loading on the
cars, provided such pilings were up to the specifications of the
contract; and the contract price was admissible in evidence to
determine the value.                                    p. 557

Where the performance of the contract is prevented by the
act of the defendant, the plaintiff may recover for part per-
formance under the common counts.                       p. 556

By this contract and by the condition of the parties, time for
delivery was not of the essence.                        p. 557

*Decided January 15th, 1919.*

Appeal from the Circuit Court for Carroll County. (FOR-
SYTHE, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE,
BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE, and CON-
STABLE, JJ.

*James A. C. Bond* (with a brief by *Bond & Parke*), for the appellant.

*Guy W. Steele,* for the appellee.

BURKE, J., delivered the opinion of the Court.

Robert W. Carter, the appellee, sued the Baltimore & Ohio Railroad Company in the Circuit Court for Carroll County, and recovered a judgment for $469.49, and this appeal was taken from that judgment. The declaration contained the common counts only. Upon motion of the defendant, a bill of particulars was filed, by which it appeared that the suit was brought to recover for the value of eighty-eight poles of various sizes specially set forth therein. The record shows that on the 3rd of April, 1917, the plaintiff and defendant entered into two written contracts, designated on the record as Nos. 2051 and 2054, whereby the plaintiff under the first contract agreed to furnish and load f. o. b. on the cars of the defendant at Marriottsville, Sykesville and Woodstock Stations, Maryland, certain piling, called in the evidence "mixed" piling, because it was spoken of in the contract as red, black, scarlet, pin, shingle or laurel oak piling. Under the second contract, he further agreed to furnish and load f. o. b. on the cars of the defendant at the same stations forty white oak pilings. The mixed piling was to be shipped to Green Spring, West Virginia, and the white oak to Benwood, West Virginia. Both lots of piling were to be peeled, and subject to inspection at point of loading. The contracts appear in the record and are definite as to the quantity, size, price, and were to conform to the specifications of the appellant company. Under the first contract (No. 2051), the shipment was to be made within sixty to ninety days, and under the second (No. 2054)—that relating to the white oak piling—the shipment was to be made complete in thirty days. The appellant reserved the option to cancel the contracts if they were not complied with within the time specified. This option, however, was never exercised. It is im-

portant here to note that the piling was not required to be shipped at one time. One provision of the instructions was as follows: "Do not wait until entire order is completed before rendering invoices, but render bill promptly for each carload forwarded." This instruction constituted a part of the contract.

The contracts were not fully completed by the plaintiff. None of the piling was loaded upon the defendant's cars. Forty-four pieces of the mixed piling were inspected by the defendant, but none of the white oak piling was inspected. These poles were hauled and placed by the plaintiff in the switch yard of the defendant at Marriottsville, one of the stations named in the contracts. He testified that the mixed poles which he had deposited there were ready for delivery to the defendant on May 10th, and that he then called up R. L. Lynn, the defendant's lumber agent, at Baltimore, and "I told him on the 10th or 11th of May, 1917, to send up an inspector. James A. Gower, one of defendant's inspectors, was sent up, and made his inspection of the 'mixed' poles on 28th of May, 1917. He inspected and stamped 44 of the 'mixed' poles. Four 'mixed' poles were not stamped that day because John Weetenkamp had taken these four poles off my pile, and they were not there when the inspector was, but Weetenkamp brought four poles back and put them on my pile the next day. The other order (No. 2054) was for 40 'white oak' poles. I had 85 'white oak' poles in Marriottsville Yard; some of them were too small for the Baltimore & Ohio Railroad. Some were put there in April and before the 9th of May, 1917. I had 40 'white oak' poles there conforming to B. & O. specifications because I measured them. I am familiar with the requirements of its specifications. After I had picked these forty out and had measured them, I notified Mr. Lynn, the defendant's lumber agent at Baltimore, somewhere between the 10th and 12th of May, 1917, that the poles were there, and they could take out what they wanted and the balance I would use for something else. The inspector, J. A. Gower, came up on May

28th, and inspected the 'mixed' poles, but did not have time to inspect the forty 'white oak' poles. Mr. Gower then told me to order in cars for the 'mixed' and 'white oak' poles, and as soon as cars were placed there he would come out and take up these white oak poles and stamp them as they were put on." The plaintiff further testified that on the evening of the day the inspection was made he ordered two flat cars for all the poles to be sent up immediately; that he called up the agent every day to know if the cars had come, and that he was ready to load the poles whenever the cars came; that he had asked for the inspector about the 10th of May, and when the inspector came he said the delay had been caused by his being so busy at Locust Point. No further inspection was made, and no cars were sent, although they were ordered every day from the 29th of May to the 6th of June, on which day an unusually heavy rainstorm occurred, and the poles were washed into the Patapsco River, causing the loss, as stated in the appellant's brief, "of the poles and property collected there for sale and delivery to the Baltimore & Ohio Railroad Company." The plaintiff testified that "at the time they were washed away the 'mixed' and 'white oak' poles were peeled, and were in accordance with the specifications of the orders."

It was the duty of the defendant under the contracts to make the inspection and furnish the cars in a reasonable time after they were notified to do so by the plaintiff, and with respect to the white oak poles it certainly can not be denied that the plaintiff was ready to complete his contract, and if he was prevented from performing his contracts for either class of poles by reason of the unreasonable delay in inspection and the furnishing of the cars, he would be entitled to recover in some form of action. It is provided by Article 83, Section 43 (*b*) of the Code that: "Where delivery has been delayed through the fault of either buyer or seller, the goods are at the risk of the party in fault as regards any loss which might not have occurred but for such fault."

There is evidence in the case from which the jury could have reasonably found that the defendant did not, within a reasonable time, make the inspection and furnish the cars, and that the loss to the plaintiff would not have occurred but for such failure of duty.

There was one exception taken to a ruling of the Court, permitting the plaintiff to show the usual time required by the defendant to deliver cars at Marriottsville after they had been ordered. This evidence was admissible as tending, in connection with other facts and circumstances, to fix responsibility upon the defendant under the provision of the Code above quoted. The facts set out are all that need be stated to enable us to dispose of the legal questions presented by the record.

At the conclusion of the whole case, the plaintiff offered three prayers. The first and second were refused and the third was granted. The defendant offered three prayers, which the Court refused. The defendant filed special exceptions to the plaintiff's third prayer, and these were overruled. The defendant excepted to the overruling of its exceptions, to the refusal of its first, second and third prayers, and to the granting of the plaintiff's third prayer. These rulings constitute the second and third exceptions.

We will first consider the defendant's three prayers. Its first prayer asked the Court to direct a verdict for the defendant upon the ground that there could be no recovery under the pleadings. It is contended in support of this prayer that inasmuch as there is an existing *special* contract between the parties which the plaintiff has not performed, there can be no recovery upon the common counts. The evidence, as we have stated, tends to show that the plaintiff was prevented from performing his contracts by the fault or failure of duty of the defendant in the respects indicated. It is said in 1 *Poe on Pleading and Practice,* Section 102, that so long as there is a special agreement *not violated* by the defendant, or rescinded, or abandoned by consent of the parties after a partial performance by the plaintiff, and he

556        B. & O. R. R. CO. vs. CARTER.

Opinion of the Court.                    [133

seeks to recover for such partial performance, the recovery must be had, if at all, exclusively upon the special contract. But where performance has been prevented by the act of the defendant it is well settled that the plaintiff may recover for part performance under the common counts. This was distinctly held in *Bull* v. *Schuberth,* 2 Md. 57; *Denmead* v. *Coburn,* 15 Md. 29, and in *Myer* v. *Frenkil,* 113 Md. 36. In the case last cited we said: "Where a special contract has been put an end to by the defendant, or its performance prevented by his act the plaintiff may recover under the common counts whatever may be due for so much of his contract as has been performed; but where there is a subsisting special contract which has not been performed by the plaintiff, or where its performance has not been waived, or prevented by the defendant, the plaintiff can not recover on the common counts in assumpsit for its part performance. *Bull* v. *Schuberth,* 2 Md. 38; *Rodemer* v. *Hazlehurst,* 9 Gill, 288; *Watkins* v. *Hodges,* 6 H. & J. 38; *Gill* v. *Vogler,* 52 Md. 663; *Fairfax Forest Co.* v. *Chambers,* 75 Md. 604." The second prayer asked the Court to instruct the jury that under the pleadings there could be no recovery for any of the mixed pilings, and by the third prayer the Court was asked to tell the jury that there could be no recovery under the pleadings for any of the white oak pilings. What we have said as to the first prayer applies as well to the second and third prayers, and upon the facts appearing in the record we are of opinion that the rulings on the defendant's prayers were correct. The granted prayer of the plaintiff is here transcribed: "That if the jury shall find, that on or about the 3rd day of April, 1917, the defendant gave the plaintiff the order No. 2054 for 40 pieces of white oak piling or peeled poles, that the plaintiff delivered to the defendant at Marriottsville forty white oak piles or poles in accord with the defendant's directions and specifications and requested the defendant to inspect said poles and accept them; and shall further find that the defendant did not inspect and accept said piles, or poles, but neglected to so do for an unreason-

able length of time; and shall further find that said poles in consequence thereof were afterwards washed away by flood and lost, then the verdict of the jury shall be for the plaintiff and it shall assess his damages at the price for said poles fixed in said order."

There was a special exception to this prayer, and one of the grounds of exception was that there was no legally sufficient evidence in the case that the plaintiff delivered to the defendant at Marriottsville 40 white oak poles. Under the contract there was no delivery of either mixed or white oak poles, and the theory upon which recovery was sought, as will appear from what we have said, was wrong. The recovery should have been limited to the value of the poles, which corresponded with the specifications of the orders and which were delivered at the station ready for loading on defendant's cars, less the costs of loading them on the cars, and the prices fixed by the contracts would be admissible in determining their value. It is well to say that in the bill of particulars the last three poles mentioned therein do not appear to have been called for in either contract, and therefore it is difficult to see how a recovery can be had for them.

These were not mercantile contracts, and time was not made by the parties of the essence of the contract, and their terms and the conduct of the parties do not, under the rules stated in *Scarlett* v. *Stein,* 40 Md. 525, indicate that it was the intention of the parties to make the time of delivery the essence of the contracts. For error committed in granting the plaintiff's third prayer, the judgment must be reversed.

> *Judgment reversed, with costs, and* ***new*** *trial awarded.*